Burns *v.* Rowland.

## BURNS *vs.* ROWLAND and others.

.The defendants agreed to enter into copartnership with each other as produce commission merchants, the business to commence as soon as one of the number should receive and pay in $6000. The money. was not paid in, but nevertheless an office was taken by the parties, upon which a sign was placed, containing the name of the firm, and bill-heads were printed, and a set of books opened in the firm name, without any objection on the part of either of the partners, or any attempt to repel the idea of a partnership. One of the partners, in the name of the firm, made an agreement with H. by which the latter was employed as a traveling agent of the firm, his compensation being. a part of the profits on the business he should obtain; and the firm agreed to accept and pay H.'s draft upon them, in favor of the plaintiff, for the amount H. owned to the plaintiff.

*Held* 1. That the defendants had, by their acts and language, held themselves out and represented themselves to H. as partners; and that as to the business with him they acted as partners, and he believed them to be and dealt with them as such.

2. That the agreement with H. though made by one of the partners without the knowledge of the others, being within the legitimate scope of. the business of the firm, was as binding upon the firm as it would have been had all assented to it.

The defendants addressed a letter to the plaintiff, saying: "Mr. J. B. H. is authorized to draw on us at thirty days for amount he may owe you, which draft we will accept and pay." Upon the faith of this letter the plaintiff received from H. his draft upon the defendants, for $259.13, payable thirty days *after date*, in payment of a debt H. owed him.

*Held* 1. That the draft was drawn in conformity with the letter, although it was for a specific sum, while none was mentioned in the letter; and that it was not for the drawers to allege an abuse of his discretion by H. in drawing for an amount larger than he named, unless it was brought home to the plaintiff.

Burns *v.* Rowland.

2. That the draft also conformed to the letter, in respect to the time of payment, although the draft was made payable thirty days "after date," and the letter authorized a draft at "thirty days."

3. That there was a sufficient and valuable consideration for the draft; the debt of H. to the plaintiff being due, and the plaintiff, before taking the draft, having a right to enforce its payment presently, which right he relinquished by receiving the draft, and his power to collect the debt from H. being suspended until the draft should mature.

4. That the letter of the defendants was a good and effectual acceptance of the draft afterwards drawn in pursuance of the promise therein; and that the defendants were liable as acceptors.

APPEAL from a judgment entered upon the report of a referee. The action was brought to charge the defendants as copartners, as acceptors of a bill of exchange drawn by one Hussey, upon their promise in writing to accept the same, before it was drawn. The defendants, by their answer, denied that they were ever copartners, or that they ever authorized Hussey to draw any draft or other obligation on them, or the firm; or that they ever promised the plaintiff to accept and pay said draft. The referee found as matters of fact that the defendants had agreed to enter into partnership on some terms or conditions, and did by their acts and language hold themselves out, and represent themselves to Hussey as partners; that as to the business with Hussey they acted as partners, and he believed them to be and dealt with them as such; and as conclusions of law he found and reported that as to Hussey and the plaintiff deriving title through and in that respect representing him, they were liable as partners, and he found and reported that the letter of the defendants to the plaintiff contained an express promise to accept the draft in question, and was good and effectual as an acceptance of it, and that the defendants were liable as acceptors thereof. He accordingly reported that the plaintiff was entitled to recover against the defendants the amount of said draft, with interest and costs. The defendant appealed from the judgment entered upon the report.

*James W. Culver*, for the appellant.

*G. F. Jenks*, for the respondent.

*By the Court*, SCRUGHAM, J. The defendants, in the latter part of the year 1857, agreed to enter into copartnership as produce commission merchants, and that the business should commence as soon as the defendant Rhodes should receive and pay in about $6000, which it was expected he would do prior to the 1st January, 1858. The money was not received, but nevertheless an office was taken by the parties upon which a sign was put, containing the name of the firm, Rowland, Rhodes & Co., and bill-heads were printed, and a set of books opened, in the same name. These circumstances were known to the defendant Rowland, who was at the office several times, and although he testifies that he forbade the defendant Hutchings taking any proceedings under the partnership name, he did not object to the sign, or make any request to have it altered or removed, or take any steps to overcome the effect of these circumstances in leading third persons to the belief that the firm existed. Mr. Hussey, who was employed as a traveling agent for the firm, testifies that before such employment he was informed by the defendant Rowland that he was a member of the firm; and although the defendant Rowland denies that he ever made such a statement to any person, there is sufficient evidence in the case to support the conclusions of the referee that the defendants did, by their acts and language, hold themselves out and represent themselves to Hussey as partners; and that as to the business with him they acted as partners and he believed them to be and dealt with them as such. The agreement with Hussey was made by the defendant Hutchings in the name of the firm; and it was that Hussey should purchase produce and get consignments for the firm; and should receive as his compensation a part of the profits on the business he should obtain; and the defendant should accept and pay his draft upon them in

favor of the plaintiff for the amount which he owed to the plaintiff. Such a transaction, being within the legitimate scope of the business of produce commission merchants, is as binding upon a firm engaged in that business, when the agreement is made by one of the partners without the knowledge of the others, as it would be if all had expressly consented to it.

After the agreement was made with Mr. Hussey the defendant Hutchings, acting for and in the name of the firm, addressed a letter to the plaintiff as follows:

"Rowland, Rhodes & Co., produce commission merchants,

33 Pearl st., New York, Jan. 18th, 1858.

Mr. Jas. L. Burns, Dear Sir: Mr. J. B. Hussey is authorized to draw on us at thirty days for amount he may owe you, which draft we will accept and pay.

Yours truly, ROWLAND, RHODES & Co."

Upon the faith of this the plaintiff received from Mr. Hussey his draft upon Rowland, Rhodes & Co. for $259.13, dated January 18, 1858, and payable thirty days after date, in payment of his bill against Hussey for board of himself and family at his hotel, and allowed Hussey to remove his baggage. The draft being afterwards presented, the drawers, through the defendant Hutchings, refused to accept it, alleging as the only reason for such refusal that the plaintiff's claim against Hussey was larger than Hussey had represented it to be. The plaintiff now claims that the letter to him must be deemed an actual acceptance, under the statute, which is as follows: "An unconditional promise in writing to accept a bill before it is drawn shall be deemed an actual acceptance, in favor of every person who upon the faith thereof shall have received the bill for a valuable consideration."

That the promise contained in the letter was unconditional, in writing and made before the bill was drawn, and that the plaintiff received the bill upon the faith thereof, are matters which do not admit of dispute, and the only questions im-

portant to consider are whether the draft was drawn in conformity with the letter, and whether the plaintiff received it for a valuable consideration.

It is no objection to the draft that it is made for a specific sum, which the letter does not mention. The sum was the amount which Mr. Hussey owed the plaintiff at the date of the letter, and the letter authorizes a draft for that amount, whatever it might be. It was for an indebtedness already accrued, the amount of which was certain or then easy to ascertain, and could not be increased. The letter fixes that limit to the amount of the draft and no other, (the drawees doubtless relying upon Hussey's representation in regard to it,) and it is not for them to set up an abuse of his discretion by Hussey in drawing for an amount larger than he named, unless it is brought home to the plaintiff. (*Bank of Michigan* v. *Ely*, 17 *Wend.* 512.) It is urged that the draft does not conform to the letter, in that it is made payable thirty days after date; and the authority was to draw at "thirty days." As the precise meaning of these words is not fixed by law, we must in construing them consider the intention of the parties in using them. This rule was followed in the case of *The Ulster Co. Bank* v. *McFarlan*, (3 *Denio*, 553,) by all of the learned senators who delivered opinions; and that case is now cited as authority for holding that the words "at thirty days" means "thirty days after sight," and not "thirty days after date." This would be to give a precise legal meaning to the words, and if they have such the arguments in that case would not have been founded upon considerations of the intention of the parties in using those words. The case must rather be regarded as authority that in each case where such words are used, they must be interpreted according to the intention of those who use them, to be ascertained from the circumstances of the case.

In that case there was a continuing letter of credit binding for one year from its date, and authorizing bills to be drawn at ninety days at different unspecified times and in different

Burns *v.* Rowland.

unfixed amounts, and only providing that the whole amount unpaid and running should not exceed $3000. The period named for the running of the bills could not be considered as having any reference to the date of the letter, for the authority was to draw from time to time; and if bills were drawn at ninety days after their date the drawee might be called on for payment on presentment without previous notice of the amount of the bill, of the time of its maturity or even of its existence; and it was considered that the words "at ninety days" were inserted in the letter of credit "to secure to the drawee a knowledge not only of the time of payment but also of the amount to be paid;" and to guard him against being "subjected from time to time during a whole year to a large and uncertain liability," it was held that the drawer intended the bills to be made payable "ninety days after sight."

In the case now under consideration the circumstances are very different. Only one transaction was contemplated, the names of the parties were given, the amount sufficiently known and indicated, and there is nothing in the letter rendering its date immaterial in considering the intention of the parties in the use of the words "at thirty days."

The agreement to accept was a part of the consideration of Hussey's employment by the defendants; and the letter was given with the view of releasing his baggage and enabling him to depart for the west on the business of the firm. Reading the letter in the light of these circumstances I think it is clear that the only intention which the drawees had in the words "at thirty days," was to secure a credit of at least thirty days from that date, which would be effected as well by a draft at thirty days from date as by one drawn payable at thirty days from sight. This view is confirmed by the fact that when the draft was presented no objection was made to its form, but acceptance was refused only because it was for a larger amount than the drawees expected. If therefore the draft was received by the plaintiff

Burns *v.* Rowland.

for a valuable consideration, the letter must be deemed an actual acceptance. The plaintiff claims that he received it in satisfaction and discharge of a debt which was then due him from Hussey for board, and that on receiving it he relinquished the lien which, as an innkeeper, he had on the baggage of Hussey who was his guest. There is no evidence that the draft was received in satisfaction and discharge of the pre-existing debt, and while it appears that the plaintiff claimed the right to detain the baggage until his bill was paid it is not apparent that any such right in fact existed, for there is no evidence to show that the plaintiff was an innkeeper, or that the Pierrepont House was other than an ordinary boarding house. It appears, however, that the debt of Hussey to the plaintiff was due, and the plaintiff before taking the draft had a right to enforce its payment presently. By receiving the draft he relinquished this right, and his power to collect the debt from Hussey was suspended until the draft should mature. This was a sufficient and valuable consideration.

The judgment should be affirmed.

[KINGS GENERAL TERM, February 14, 1863. *Brown, Lott* and *Scrugham,* Justices.]