GREENWOOD *et al.* v. BRINK, appellant.

*Partnership — what constitutes — participation in profits.*

In an action to recover for goods sold and delivered by a firm to defendant, the answer was that the goods were sold in a firm name in violation of the statute relating to fictitious names in firms (Laws of 1833, ch. 281), there being in fact no firm at the time of the sale. Upon the question of the existence of a partnership, the judge charged that "participation in the profits makes a man a partner, and it is not necessary that they should say any thing about losses." The charge was accompanied with the explanation that it is competent for a firm to employ clerks and give them as a compensation for services a certain amount of profit, but it must be distinctly understood between the parties that it is as compensation, and that they have no interest in the business whatever. *Held,* correct.

One of the clerks of G. had for his services one-fifth of the profits, and the business was carried on under the name of " G. & Co.," the clerk representing the Co. *Held,* that they were partners as to third persons, and these facts were a sufficient answer to the defense of the violation of the statute.

APPEAL from a judgment in favor of plaintiffs. The action was brought by Alfred Greenwood and Harry Aldridge against Mary A. Brink, to recover for goods sold and delivered to defendant by the firm of Alfred Greenwood & Co. The answer alleged that the designation " & Co." did not represent a partner, and that plaintiff Greenwood had violated Laws of 1833, chapter 281. The opinion states the remaining facts.

*E. H. Benn,* for appellant.

*C. J. G. Hall,* for respondent.

DAVIS, P. J.   The demurrer to the answer having been overruled by the court, and leave given to reply on payment of costs of the demurrer, and the plaintiffs having served a reply and paid the costs, the demurrer must be regarded as abandoned, although not formally withdrawn. *Brown* v. *Saratoga R. R. Co.*, 18 N. Y. 495 ; *Cutler* v. *Wright*, 22 id. 472, per SELDEN, J., 483.   A reply, having been expressly permitted by the order of the court, was proper, and formed part of the record. Code of Procedure, § 153.   The order, on the overruling of the demurrer, was obtained on defendant's motion, and the provision requiring a reply and payment of costs, must be deemed to be granted on his motion.   The record, therefore, properly before the court on the trial, was the complaint, answer and reply, and the issue to be tried arose upon the answer and reply.   The answer admitted all the material allegations of the complaint, and entitled plaintiffs to judgment for the goods sold, unless the defendant should affirmatively establish that the goods were sold to her by Greenwood, in a firm name, in violation of the statute, when, in fact, there was no firm at the time of the sale.   On that issue, evidence was given to the jury on both sides, and the jury found adversely to the defendant.

The only question in the case is, whether the court was correct in charging the jury that "participation in the profits " (of a firm) " makes a man a partner, and it is not necessary that they should say any thing about losses." The court accompanied this charge with the explanation that it is competent for a party or firm to employ clerks, and give them, as a compensation for services, a certain amount of profit, but it must be distinctly understood between the parties that it is as compensation, and that they have no interest in the business whatever, and he left it to the jury to say whether the arrangement between Greenwood and Aldridge gave the latter an interest in the business, or a share in the profits as a partner, or whether Aldridge was to receive a share in the profits as compensation merely.   I do not think there was any error in this ruling. Both of the plaintiffs testified, substantially, that Aldridge was a partner, with the understanding that he should put in his services and be interested in the business, and have one-fifth of the profits, over and above losses, for his share.   They assumed a firm name, and carried on business in such name, Aldridge representing the " & Co." Upon their testimony, they would not be permitted to

say they were not partners as to third persons and creditors, whatever the law might hold as between themselves. And I think it is a sufficient answer, under the statute making it a penal offense to assume a copartnership name where no partnership exists, to show that the firm name actually represented persons who were liable as partners to third persons and creditors.

It is well settled, by the law merchant, that a participation in the uncertain profits of trade, as a return of capital advanced, constitutes such participator a partner in the concern in which the capital is invested, and makes him liable to third persons, although he is to receive back his whole capital and interest, without deduction for losses or liabilities, as between himself and partners. *Oakley* v. *Aspinwall*, 2 Sandf. 7; *Waugh* v. *Carver*, 2 H. Blk. 235; 1 Smith's. Lead. Cas. 491; *Dob* v. *Halsey*, 16 Johns. 34. One who takes a share of the profits, *as such*, of a trading firm, becomes a partner as to third persons, on the ground that those profits form a portion of the fund upon which creditors have a right to rely for payment. *Pott* v. *Eytor*, 8 Man., Gr. & Sc. 31; id. 641. The modifications of the rule, in this State, require that the servant, compensated by a share of profits, shall have no community of interest in the capital stock of the concern, and shall not, by any arrangement, be deemed a partner as between himself and the members of the firm, and shall not suffer his name to be used as a partner, nor be the person represented by the "Co." *Burckle* v. *Eckhart*, 3 N. Y. 132; *Manhattan Brass Co.* v. *Sears*, 45 id. 797. In short, he must not hold himself out, in form or in fact, as a partner; otherwise he falls within another rule. *Burns* v. *Rowland*, 40 Barb. 368; *Parker* v. *Barker*, 1 Brod. & Bing. 9.

The issue tendered by the answer, having been disposed of favorably to plaintiffs, they were entitled to a verdict, because no issue had been taken on the allegations of the complaint. The plaintiff might have failed in the action if the defendant had denied the allegations of the complaint, for some of those allegations were disproved (to wit, the sale by Greenwood alone) by the proof of partnership, and, unless the court had permitted an amendment, the defendant would have succeeded on such an issue.

There was no issue to which to apply the variance between the proofs given to defeat the allegations of the answer and the averments of the complaint, and the only issue in the case being dis-

posed of against the defendant, it follows that the judgment must
be affirmed.

LAWRENCE and DANIELS, JJ., concurred.

*Judgment affirmed.*

NOTE.—In *Ex parte Hamper*, 17 Vesey, 404, 412, Lord ELDON said: "If a man stipu-
lates that, as the reward of his labor, he shall have, not a specific interest in the busi-
ness, but a given sum of money even in proportion to a given *quantum* of the profits,
that will not make him a partner, but if he agrees for a part of the profits, as such,
giving him a right to an account, though having no property in the capital, he is, as to
third persons, a partner." See *Dwinel* v. *Stone*, 30 Me. 384; *Loomis* v. *Marshall*, 12 Conn.
69; *Clement* v. *Hadlock*, 13 N. H. 185; *Bradley* v. *White*, 10 Metc. 303. In *Wheatcroft* v. *Hick-
man*, 9 C. B. (N. S.) 47, 92, 99, it was suggested in the house of lords that the right to
share in the profits does not *per se* render one having that right, a partner as to third
persons. See, also, *Cox* v. *Hickman*, 8 H. L. Cas. 268; *Heap* v. *Dobson*, 15 C. B. (N. S.)
460; *Bullen* v. *Sharp*, L. R., 1 C. P. 86; Collyer on Partnership, § 25; Chitty on Contr. (11th
Am. ed.) 319, note z, 327, 328, 334, and cases there cited. In *Parker* v. *Canfield*, 37 Conn. 250,
it appeared that defendant loaned money to A, and took therefor a promissory note,
payable with interest in three years; and an agreement that, in consideration of the
trouble and expense in procuring the money loaned, A would pay him such further
sum, annually, as, with the interest, would be equal to one-sixth of the annual net
profits of A's business. *Held*, that defendant was liable as partner to a business
creditor of A. In the course of his able opinion in this case, Judge SEYMOUR said:
"The sharing in the profits of a business was formerly regarded as decisive to charge
the party so sharing with liability as partner as to third persons; but the modern cases
admit of exceptions to the general rule, and the defendants contend that the excep-
tions have in truth subverted and supplanted the rule, so that now the mere partici-
pation of profits is no ground whatever for charging the participant as a dormant
partner. On this point we cannot adopt the views of the defendant. The rule itself
is firmly established as part of the common law of England, and has been generally
recognized as law in this State. We concede that the rule is subject to important ex-
ceptions, the principal of which is that of servants and agents who are permitted to
receive a certain percentage of the profits of a business as compensation for their ser-
vices in that business. This exception was adopted in Connecticut in a nicely balanced
case, that of *Loomis* v. *Marshall*, supra. . The court deemed it a matter of public policy
that enterprising citizens who possess industry and skill, but are without capital,
might be employed for a compensation proportioned to the avails of their labor and
skill, without involving themselves and their employees in the responsibilities of part-
nership. In this class of cases the agent receives what is termed a commission on the
profits, as a mode of payment adapted to secure and increase exertion. This distinc-
tion between profits received as such by a principal, and profits received by an agent
as compensation for services, is nice and sometimes difficult of application, but is
fully established."

"By the admitted exceptions to the general rule, agents and servants employed in a
business may participate in profits as a compensation for services, without involving
themselves in the responsibilities of a partnership. If we should now decide that
parties lending money to be used in a business may also participate in profits as a com-
pensation for trouble, time and expense in procuring the money lent, the two excep-
tions to the rule would annihilate the rule itself. By the first exception the party
conducting a business as its agent, and by the second the party furnishing the capital,
would be exempt from liability, and thus there would be no case left where parties
could not, by the force of words alone, evade the rule."

"A business may, in general, justly be regarded as carried on for the benefit
of those who participate in its profits, and the burdens and responsibilities of such
business are, in general, justly cast upon those for whose benefit it is conducted.

Greenwood v. Brink.

There may be exceptions, but we are clear that the case under consideration justly falls within the general rule and must be governed by it." In *Manhattan Brass & Manuf. Co.* v. *Sears*, 45 N. Y. 797, the rule was laid down that an agreement to share in the losses as well as the profits of a business is not necessary to constitute a partnership as to third persons; an agreement to share in the profits alone is sufficient, and one who furnishes capital under such an agreement is liable as a partner. Under such circumstances it is a partnership as to third persons, even though expressly agreed that it should not be so between themselves.

But the later English cases do not entirely correspond in theory with the cases of *Parker* v. *Canfield, supra,* and *Manhattan Brass & Manuf. Co.* v. *Sears, supra.* See *Cox* v. *Hickman, supra; Wheatcroft* v. *Hickman, supra; Heap* v. *Dobson, supra; Bullen* v. *Sharp, supra.* In *Wheatcroft* v. *Hickman, supra,* Lord CRANWORTH said, a right to participate in profits affords cogent, often conclusive, evidence that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such claim; but the real ground of the liability is, that the trade has been carried on by persons acting in his behalf. The liability of one partner for the acts of his copartner is in truth the liability of the principal for the acts of his agent. And in *In re English and Irish Church Soc.,* 1 W. R. 681; 1 Hem. & M. 85; 8 L. T. (N. S.) 724, it was held, that the law of partnership is a branch of the law of agency, and the test of partnership is not simply whether the alleged partner was to receive a share of profits, but whether he constituted his alleged copartners, his agents for carrying on business. The receipt of profits is only important as a consequence of such agency, and a ground for inferring it in certain cases. To the same effect is *Kilshaw* v. *Jukes,* 3 B. & S. 847; 32 L. J. (Q. B.) 217; 9 Jur. (N. S.) 1231. In *Andrews* v. *Pugh,* 24 L. J. (Chanc.) 58, it appeared that A and B were tailors; A employed B to obtain orders for him, and agreed to allow him a share of the profits by way of commission upon such orders. B carried on the business with A, but his name was not joined with that of A. All goods were ordered and paid for by A, and all debts were paid to him alone. B set up a partnership. *Held,* that a right to share in the profits did not necessarily create a partnership, and there was no evidence to prove a partnership on the part of B. In *Mollow* v. *Court of Wards, L. R.,* 4 C. P. 419, it was held, that although a right to participate in the profits of a trade is a strong test of partnership, and there may be cases where, from such participation alone, it may as a presumption, not of law, but of fact, be enforced; yet, whether that relation does or does not exist, must depend on the real intention and contract of the parties. In that case it appeared that an agreement in writing was entered into between W. & Co., British merchants, carrying on business at Calcutta, with a Hindoo Rajah, by which, in consideration of moneys already advanced, and which might thereafter be advanced by the Rajah to them, they agreed to carry on the business subject to the control of the Rajah in several particulars, stipulating that the Rajah should receive a commission of fifty per cent on all profits made by the firm, until the whole amount of the debt due to him should be paid off, with twelve per cent interest upon all cash advances which had been or might be thereafter made by him to the firm. Further advances having been made by the Rajah to the firm, W. & Co. executed to him a mortgage of certain tea plantations to secure the then amount of his advances, and the Rajah, by a deed, released his right to commission and interest under the original agreement between them. No proceeds of the business were ever received by the Rajah, and though he was credited in the books of the firm with a considerable sum, that sum was never received by him, and was afterward written back in the books of the firm. The Rajah did not interfere or exercise any such control in the business as to make him an ostensible partner in the firm. *Held,* that having regard to the restrictions and modifications made of late in the rule of law prevailing, that participation in the net proceeds of the business made the participant liable as a partner to third parties; and looking at the whole scope of the agreement, the primary object was to give security to the Rajah as a creditor of the firm of W. & Co., and that the participation given him in the net profits of the business, was not sufficient to establish a partnership between W. & Co. and the Rajah, as regarded third parties. See, also, *Holme* v. *Hammond,* 41 L. J. Exch. 157; 4 L. R. Exch. 218; 20 W. R. 747; *Ex parte McMillan, In re Whittaker,* 24 L. T. (N. S.) 143. — REP.