## Dovey's Appeal.
## Moodie's Appeal.

1. The modern doctrine of *lis pendens* is based not upon the theory that a pending suit is constructive notice to all the world, like a recorded deed ; but upon the ground that the law will not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party, and defeat the execution of the decree to be entered in the cause.

2. The doctrine of *lis pendens* can, therefore, have no application except in those cases where the *lis* in question is of such a character as to enable a definite decree to be entered therein, deciding the right of property between the parties.

3. Whether the doctrine of *lis pendens* will apply where the property concerning which the litigation is pending, consists of stock, not decided.

4. The taking of a security not as collateral for, but as payment of an antecedent debt, will constitute the assignee a holder for value, so as to give him the rights of a bona fide purchaser.

5. A bona fide purchaser of a certificate of stock with blank power of attorney from a confidential agent of the owner in whose custody it has been deposited, and whose sale thereof is fraudulent, is entitled to hold the same as against the real owner or his representatives.

February 1st 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., did not sit.

Appeals from the decree of the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term 1880, Nos. 33 and 88½. These two appeals were from the same decree, and were argued together.

This was a bill in equity, filed May 6th 1877, by Charles E. Morris, assignee for the benefit of creditors of Henry G. Morris, against John J. Dovey and William J. Moodie and others, trading as Moodie, Gross & Co.   John J. Dovey died after suit brought, and his executors were substituted.   The plaintiff, Charles E. Morris, also died, and the Philadelphia Trust, Safe-Deposit and Insurance Company were appointed assignee, and substituted of record in his place.

The bill was filed to recover part of the proceeds of a judgment recovered by Dovey in the United States Court against the Seventh National Bank of Philadelphia for refusing to permit him to transfer 75 shares of stock in said bank, of which he held a certificate and power of attorney.   The plaintiff admitted that Dovey was entitled to $3700 thereof, but asserted that the residue, $2262.25, belonged to the plaintiff.   After answers filed, the cause was referred to a master, who found the facts substantially as follows :

In January 1874, Henry G. Morris was the owner of a certificate for 75 shares of the stock of the Seventh National Bank of Philadelphia.   In that month he pledged it to the Provident Life and Trust Company as collateral security for a loan, and a

new certificate was issued in their name, dated January 23d 1874. Upon the payment of the loan, on March 24th 1874, the trust company executed an assignment in blank upon the back of the certificate, with a blank power of attorney to transfer and deliver the same to one Alexander Ervin, then the confidential agent and financial manager of Henry G. Morris.

On April 29th 1875, Henry G. Morris and wife made an assignment for the benefit of creditors to Charles E. Morris, and on the same day Ervin ceased to be in the employ of Henry G. Morris.

On June 7th 1875, the said Ervin—who had retained possession of the said certificate and power—fraudulently sold and delivered the same to Moodie, Gross & Co., and received therefor from them the sum of $3700 in cash, an overdue check of his for $2500, and a receipted bill for coal previously sold him for $250.83, making a total of $6450.83.

The assignee of Henry G. Morris notified the bank soon afterwards not to transfer the stock, as it belonged to his assigned estate ; and when Moodie, Gross & Co., on September 27th 1875, presented the certificate to the bank for a transfer, their demand was refused.    Thereupon Moodie, Gross & Co., on October 14th 1875, filed a bill in equity in the Court of Common Pleas, No. 4, against the bank and Charles E. Morris, assignee of Henry G. Morris, to compel a transfer, and praying, inter alia, for a decree that said Charles E. Morris, assignee, should be debarred and precluded from recovering the said stock, or its value, from the bank.    The answer of Charles E. Morris set forth all the above facts, and averred that Moodie, Gross & Co. did not purchase the said stock, but received the same from Ervin as a pledge for a private debt of his, contracted before that date, under circumstances which would have placed any prudent business man on inquiry had the transaction been bona fide.    No cross-bill was filed by Morris in this suit, and the cause was referred to a master.

Pending this litigation, on May 24th 1876, Moodie, Gross & Co. borrowed $5000 from John J. Dovey, and delivered to him, as collateral security for said loan, the said certificate and blank power of attorney.    This transaction was made without the knowledge of· Morris, assignee, or the bank ; and Dovey then had no notice or knowledge of the pending of said suit in equity.

The master in the· above cause of Moodie *v.* The Bank and Morris, reported that Moodie, Gross & Co., were bona fide purchasers of the said stock from Ervin for the full consideration of $6450.83 ; and he recommended a decree that the bank be required to transfer the said certificate, as prayed in the bill, *unless* Charles E. Morris, assignee, should within fifteen days pay to the plaintiff the whole of the said consideration of $6450.83, with interest, in which case the plaintiff should be required to deliver the certificate to said assignee, and the bank should then transfer the same to him.

Upon exceptions filed by Charles E. Morris, assignee, the court, in an opinion by BRIGGS, J., held, that Moodie, Gross & Co., were purchasers for value only to the extent of the $3700 paid in cash; and reversed so much of the master's finding as decided that the plaintiffs were also purchasers for value as to the check for $2500, and coal bill for $250.83. The court thereupon entered the following decree November 4th 1876: "That the said plaintiffs, Moodie, Gross & Co., deliver to the said Charles E. Morris, assignee of Henry G. Morris, the said certificate, No. 476, for seventy-five shares of the capital stock of the Seventh National Bank of Philadelphia, upon the said Charles E. Morris paying to the said plaintiffs $3700, with interest thereon from June 7th 1875, on or before the thirtieth day of November instant; and that the said bank shall thereupon, upon the surrender of the said certificate by the said Charles E. Morris, transfer the same to him on the books of the said bank."

In August 1876, Dovey, without the knowledge of Morris, assignee, had presented the certificate to the bank for transfer, which was refused because of the notice received from Morris in 1875, and on November 22d 1876, Dovey brought a suit at law in the United States Court against the bank, founded on such refusal. On April 17th 1877, he recovered judgment for $5962.25, and on that day received that amount in money and surrendered the certificate to the bank. Dovey's right to $3700 (as the assignee of Moodie, Gross & Co.'s bona fide interest), not being disputed, he retained that sum, and the balance of the money so recovered on the judgment, after deducting costs, viz., $1818.60, was by agreement left in the hands of Dovey's counsel (R. C. McMurtrie, Esq.) to await the issue of this suit, and was by him deposited in the Pennsylvania company at interest.

On April 28th 1877, the foregoing facts (viz., Dovey's loan of $5000 to Moodie, Gross & Co., on the security of the certificate, and his suit and recovery against the bank) having been brought to the notice of the Court of Common Pleas in the equity suit of Moodie, Gross & Co. against the bank and Morris, assignee, and it being suggested by counsel that a decree against the plaintiffs for the transfer of the stock to a defendant who had filed no cross-bill against the plaintiffs was irregular, the court were of the same opinion. The court thereupon (without filing a further opinion) made the following order:

"We are satisfied that this decree has been erroneously entered against the plaintiffs, as there was no cross-bill filed to support it; and we do now order that the said decree of November 4th 1876, be and is hereby vacated.

"And now, April 28th 1877, it is ordered that the plaintiff's bill be dismissed, at the plaintiffs' costs."

An appeal taken by the plaintiffs from said decree to the Su-

preme Court was nonprossed when reached, in January 1879, at the request of the appellant's counsel.

This bill, filed by Morris May 16th 1877, prayed (1) That it be decreed that the defendant Dovey holds the balance of the sum, $5962.25, recovered by him in his suit at law against the bank, after deducting the sum of $3700, with interest and costs, in trust for the complainant as assignee, and that he account for and pay over the same; (2) That the defendants Moodie, Gross & Co. be restrained from claiming the same, or any part thereof, either from the said Dovey or the complainant.

The master to whom this cause was referred reported, as matter of law, that Moodie, Gross & Co., when they borrowed the $5000 from Dovey on May 24th 1876, had no right to part with the certificate in question, by reason of the pendency of their suit in equity against the bank and Morris, assignee; that Dovey was affected with notice of Moodie, Gross & Co.'s disability, on the doctrine of *lis pendens;* that he therefore took the stock subject to all its equities, including the rights of Morris, assignee, therein; and that therefore the plaintiff was entitled to the fund for distribution. In this decision the master held that the case "came strictly within the rulings of the Supreme Court in Diamond *v.* Lawrence County, 1 Wright 353." He therefore awarded the fund to the Philadelphia Trust Company, substituted assignee of Henry G. Morris.

Upon separate exceptions to the master's report, filed by Dovey and by Moodie, Gross & Co., the court, in an opinion by THAYER, P. J., held that Dovey was affected by the doctrine of *lis pendens,* not, however, on the ground stated by the master, that *lis pendens* was notice to a purchaser, but because of the general rule of policy, deducible from the more modern authorities, that, "pending a litigation, neither party can be permitted to alienate the contested property so as to affect the rights of the other;" that "this doctrine is not confined to transfers by defendants, but is equally applicable to plaintiffs," and that the alienee of either party is bound by the rule. The court further held as follows: That the meaning and effect of the final decree of April 28th 1877, in the equity suit of Moodie, Gross & Co. against the bank and Morris, assignee, vacating the prior decree and dismissing the plaintiffs' bill, were—that the plaintiffs had been shown to have no *title* to the stock, but that it belonged to the assignee of Henry G. Morris, subject to the plaintiffs' *lien* for the $3700 cash actually advanced; and therefore the relief prayed for by the plaintiffs, viz., a transfer of the whole stock was denied, and their bill dismissed. It is the substance of the decree, and not its form, which binds all who come in *pendente lite:* Style *v.* Martin, 1 Cas. in Ch. 152. "By that determination the present defendant is bound,

[Dovey's Appeal.]

because he came in *pendente lite* and purchased a title which was then in litigation, and which in the course of that litigation was determined to extend to only a portion of the property which was the subject of the dispute. That portion the defendant has already received. To allow him now to claim the whole would enable him to deprive the present plaintiff of the fruit of his former litigation, and, in effect, to subvert the decision of the court."

The court thereupon dismissed all the exceptions and entered the decree reported by the master, as the decree of the court, to wit: "And now, October 4th 1879, the above cause coming on to be heard on the master's report, and the exceptions thereto, and the same having been fully argued by counsel, and considered by this court, it is ordered, adjudged and decreed that the report of the master be confirmed, and that the exceptions thereto be dismissed; and it is further ordered and decreed that the sum of $251.87 be paid by R. C. McMurtrie, Esq., the holder of the fund at issue, to the master and examiner, for the costs and expenses of the reference, and that the sum of $1566.73, the balance on hand, with all accrued interest thereon due by the Pennsylvania Company for Insurance on Lives and Granting Annuities, be paid to the Philadelphia Trust and Safe Deposit and Insurance Company, the present assignee for the benefit of the creditors of Henry G. Morris."

From this decree, Dovey and Moodie, Gross & Co. took these separate appeals, assigning for error substantially the dismissal of their exceptions and the entering of the decree.

*R. C. McMurtrie*, for the appellant, Dovey.—This bill should have been dismissed for want of jurisdiction. Before it was filed, the stock was converted into money; the conversion was ratified by the plaintiff, whose prayer was that the defendant Dovey, as trustee, be required to pay him the money. The proper remedy was an action at law for money had and received: Grubb *v.* Grubb, 7 W. N. C. 349.

The numerous other errors of the court below began with the first decree in the case of Moodie *v.* The Bank and Morris, which directed a delivery by a plaintiff to a defendant, which was not prayed for, and directed a payment by defendant, which had never been demanded. A court of equity cannot compel a defendant to redeem the plaintiff's title when unsought by the plaintiff. Perceiving this error, the court vacated their decree, and went as far wrong on the other side by simply dismissing the plaintiff's bill. It was admitted he was entitled to hold the property until paid $3700, but the court (erroneously drawing their own decree) omitted to mention that or to reserve his rights in any way.

Following these errors, the master, in the present case, erred in his statement of the law that *lis pendens* is notice to all the world. The court reversed him on that, but adopted his conclusion upon a

different statement of the doctrine of *lis pendens*, which, we contend, was equally erroneous as applied to this case. It is true that Moodie's suit against the bank was pending when Dovey purchased, and that the decree in that suit was entered subsequently to his purchase. But the final decree in that case was that the bill be dismissed. The operation of the decree was in no way affected by the transfer of Moodie's title to Dovey. It decided nothing but that Moodie was not entitled to the relief he asked; in fact, it really decided that Moodie had no title to pass the stock conveyed to him, even to the extent he had paid for it. No one supposes that this was meant; but to find the meaning you must look to the opinion—*i. e.*, out of the record. Dovey's title does not depend on title or absence of title in his vendor, but in the fact that he was the purchaser from one having the *indicia* of ownership. The court below held, virtually, that a decree refusing to recognise a plaintiff's title is as effectual as a decree directing a conveyance. If it had directed a delivery, we admit that the decree must have been complied with. But no authority warrants the position that a purchaser of a legal title can be affected as to the real ownership by a decree in equity, when nothing is directed to be done, or can be done, under the decree pronounced, or on the case made by the pleadings. If the decree establishes an equity merely, a purchaser of the legal title is not bound. All the authorities hold that a purchaser *after* the decree is not bound, because the plaintiff then has power to execute it; and if he delays he is in the same position as any other holder of an equity. He is neither better nor worse because of the decree. That does not create a right; it is and can be nothing but an authoritative ascertainment of a right. The theory of the *lis pendens* doctrine in equity is precisely what it is at law—to prevent the defendant in a suit, or the party against whom relief is asked, by transferring the subject of the litigation pending the suit, disabling the court to give the relief asked, because the plaintiff cannot otherwise protect himself should the decree be in his favor.

It is submitted, therefore, that the true statement and limit of the doctrine of *lis pendens* is that *no change of ownership during a suit will prevent the execution of a decree, as it could have been executed if there had been no change.* It is immaterial whether a plaintiff or defendant sells. Practically, the rule only applies to a plaintiff, because there are but two instances in which a defendant can ever have affirmative relief without a cross-bill, and in neither can this rule operate. It is not a rule which makes a pending suit, or any question of fact or law incidentally decided therein, notice to or conclusive on a purchaser of a legal title. It is simply a rule that the decree must be complied with. It has nothing to do with notice or the effect on title. Whatever may be the *dicta* scattered through the books, it will be found that all the decisions har-

[Dovey's Appeal.]

monize with this statement of the rule, that *in enforcing the decree, a purchaser pendente lite is disregarded*. Nothing can better prove this to the practical mind than that this doctrine is not even known in common-law courts, while it is certainly true there as elsewhere; but there is not a form of proceeding left in which it can be applied, except it be in partition, because in no common-law action is judgment ever given for any *res*.

The *lis* that was pending in this case was a claim and denial of title. The court held that the plaintiff had no title which could be enforced in that suit, and admitted they could not give the defendant the relief he was entitled to on the evidence; they actually vacated the decree in which they had attempted to do this, because in fact, there was no *lis*; that is, no cross-bill filed, no claim for such relief. That suit was abortive. How then can it be said that there was a *lis pendens* by virtue of which the court can enforce by this bill the defendant's right against a purchaser from the plaintiff in the former suit? A purchaser of land is not affected by the fact that there is a suit pending to determine the right to money which is a charge on the land: Worsley *v.* Scarborough, 3 Atk. 592; Newman *v.* Chapman, 2 Randolph 93. A decision as to an abstract question of title, which cannot be carried into effect by the decree, is not within the rule of *lis pendens:* Carrington *v.* Brents, 1 McLean 167. In Diamond *v.* Lawrence County, 1 Wright 353, relied on by the other side, the decision was right, but the ground on which it was put, that of notice, was wrong.

Whatever the doctrine of *lis pendens* may be, however, it does not apply to stocks or similar property: Leitch *v.* Wells, 48 N. Y. 585; County of Warren *v.* Marcy, 7 Otto 96.

*Samuel Gustine Thompson*, for the appellants, Moodie, Gross & Co.—The title of these appellants to the stock was complete. The certificate stood in the name of the Provident Company, not in that of Morris. Moodie honestly bought it from Ervin, paying $3700 in cash, and cancelling antecedent debts for $2750. The court held, in their opinion by BRIGGS, J. (on the authority of the overruled New York case of Root *v.* French, 13 Wend. 570), that we were only entitled as purchasers to the extent of the cash consideration, and, because we claimed the whole, dismissed our bill. That decree settled only Moodie's right to a transfer by the bank. Where the defendant, in a former bill, files a new bill against the former plaintiff, the cause is opened on its merits: Neafie *v.* Neafie, 7 Johns. Ch. 1. This is a question of title on the distribution of the proceeds, and we have the right to appeal. The cancellation of the antecedent debt was a valid consideration: Sinclair *v.* Healy, 4 Wright 417; Swift *v.* Tyson, 16 Pet. 19; Pratt *v.* Coman, 37 N. Y. 440; Currie *v.* Misa, 10 Law Rep., Exch. 153; Walker *v.* Geisse, 4 Whart. 252.

[Dovey's Appeal.]

*Lewis Waln Smith* and *William A. Porter*, for the appellees.—
1. As to Dovey's Appeal. This case illustrates the wisdom of the
doctrine of *lis pendens*, whether based on the principle of notice,
or upon the rule of public policy, that pending litigation, neither
party shall, by parting with the thing in dispute, affect the other
party's rights. The facts are arguments. Stock of Morris was
fraudulently sold to Moodie, who sued the bank for refusal to
transfer, and made Morris co-defendant; Moodie, fearing a decree
in Morris's favor, or the filing of a cross-bill, sold or pledged, and
forfeited it to Dovey, *pending his own suit*, and Dovey collected
the proceeds by a judgment at law. If Dovey had inquired of the
bank, he would have learned that its transfer had been prohibited.
It is not inequitable, therefore, to hold him affected with notice;
but we rely on the broad principle, that where a party to a suit
holds property which is the subject of the litigation, he cannot
convey to a stranger a better title than he has himself: Ballamy *v.*
Sabine, 1 De G. & J. 580. The question of jurisdiction should
have been raised by demurrer. It was not taken below, and can-
not be considered here.

2. Moodie's Appeal. Moodie, Gross & Co., having purchased
from a fraudulent holder, were only entitled to receive back the
consideration actually paid by them. If the $3700 be refunded
with interest to them, or to Dovey, their assignee, they are in no
worse position than they were when they received the stock, and
the true owner is at least entitled to redeem it by repaying that
amount. The check was worthless, and the receipted bill was not
conclusive. Moreover, these appellants have no standing here.
The same questions were raised on their former appeal, on their
own bill, which was non-prossed. There is no decree against them
in this case, and the appeal should be quashed.

Mr. Justice PAXSON delivered the opinion of the court, Feb-
ruary 21st 1881.

The doctrine of *lis pendens* has been essentially modified by the
later decisions. In the earlier cases, both in England and this
country, it was held that *lis pendens* was notice to all the world,
with the same effect as the registration of a deed under the record-
ing acts as to constructive notice of the conveyance. More recent
cases, however, place the doctrine upon another, and, we think, a
sounder basis. In the leading case of Bellamy *v.* Sabine, 1 DeG.
& J. 580, it was said by Lord Chancellor CRANWORTH: "It is
scarcely correct to speak of *lis pendens* as affecting a purchaser
through the doctrine of notice, though undoubtedly the language
of the courts often so describes its operation. It affects him not
because it amounts to notice, but because the law does not allow
litigant parties to give to others, pending the litigation, rights to
the property in dispute, so as to prejudice the opposite party.

[Dovey's Appeal.]

The doctrine of *lis pendens*, says Mr. Adams, in his work on Equity, "has been recently considered and decided not to stand on the ground of notice, express or implied, but to follow from the general rule that, pending litigation, neither party can be permitted to alienate the contested property, so as to affect the rights of the other." This is a rule of public policy, and the object of it is to prevent the parties from making a conveyance *pendente lite* of the property or thing which is the subject-matter of the controversy, and thus to defeat the execution of the decree of the court. The effect of it is to impose a disability to convey from the time of the service of the subpœna upon the defendant. The court, in the execution of its decree, pays no regard even to a bona fide purchaser. In other words, no change of ownership during a suit will prevent the execution of a decree, as it could and would have been executed had there been no change.

So far, we are in entire accord with the views of the law as expressed by the learned and able judge of the court below. It is in the application of the law to the facts of this particular case that we think he has erred.

It is conceded that Moodie pledged the shares of stock in question to Dovey in June 1876, and that the present bill was filed on May 6th 1877. To this state of facts the doctrine of *lis pendens* certainly cannot apply. It was urged, however, and the court below adopted this view, that as the bill filed by Moodie on October 14th 1875, to. compel a transfer by the bank, was pending and undetermined when he pledged the stock to Dovey, that the said bill was a *lis pendens*, and avoided the pledge. But that bill came to nothing; it was dismissed, and that is the only decree in the cause. It could not affect this case unless we hold the dangerous, if not absurd, doctrine that *lis pendens* is to apply to every suit, even where the cause of action is purely imaginary. The consequence of such a rule would be that any man's property could be tied up, and alienation prevented by the filing of a bill setting forth a claim which had no foundation whatever.

The decree upon Moodie's bill decided nothing but that he was not entitled to the relief he asked. Had there been a cross-bill filed by the assignee of Henry G. Morris, and a decree that the plaintiff in Moodie's bill had not the title to the stock, but that it belonged to the assigned estate of Henry G. Morris, subject to the plaintiff's lien for the cash actually advanced, and therefore the relief prayed for by the plaintiffs was denied, and their bill dismissed, we would have had a different question before us. But we are unable to see how that abortive proceeding can be tacked to the present bill so as to produce a *lis pendens*.

As the record stands, the most that can be urged for Moodie's bill is that it was constructive notice to Dovey. But under the modern doctrine of *lis pendens*, constructive notice amounts to

1 OUTERBRIDGE—11

nothing, and we are of opinion that a *lis* to affect the party and destroy his power of alienation must be a *lis* in which a decree could be entered against him as to the property which is the subject-matter of the contention. He may not convey *pendente lite*, for the reason that such transfer would defeat the execution of the decree. But if the proceeding is such that no decree can be entered, why may he not convey? The true rule would seem to be that a purchaser is affected by the decision upon any claim to the property purchased, if there be a litigation pending in which that question is decided: Newman *v.* Chapman, 2 Randolph 93.

It was said in Murray *v.* Lylburn, 2 Johns. Ch. 441, that the doctrine of *lis pendens* may not apply to movable personal property, on the ground of the necessities of commerce; in the County of Warren *v.* Marcy, 7 Otto 96, that it does not apply to negotiable securities; and in Leitch *v.* Wells, 48 N. Y. 586, that it does not apply to stocks. We neither affirm nor deny the latter proposition, but decide this case upon other grounds.

The jurisdiction is doubtful. The proceeding is an action for money had and received under the disguise of a bill in equity. But as the point was not made below, either by demurrer to the bill or exceptions to the master's report, we have considered the case upon its merits.

It remains but to say a few words in regard to Moodie's Appeal. The only prayer in the bill as to Moodie, Gross & Co., was that they be restrained and precluded from claiming the fund or any part thereof either from the said Dovey or from the plaintiff. There was no decree against them, except as they may be incidentally affected by the award of the fund to the assigned estate of Henry G. Morris.

The position of the appellants is this: They bought the stock of Ervin for the sum of $6450.83, and afterwards pledged it to Dovey for $5000 cash borrowed. Under the principles indicated in Dovey's Appeal, his executors are entitled to payment in full of the sum borrowed, and for which the stock was pledged. The balance, if any, would belong to Moodie, Gross & Co., provided their title is good. It was conceded in the court below, and here, that they had title to the extent of the $3700 paid in cash for the stock. But it was contended, and so held by the court below, that as to the $2500 check, and the coal bill of $250.83, the said Moodie, Gross & Co., were not holders for value, for the reason that both the latter sums represented antecedent debts. It is true the taking of a security as collateral for an antecedent debt, does not make the creditor a holder for value, so as to give him the rights of a bona fide purchaser, but the rule is otherwise where it is taken in payment or extinguishment of the debt. In such case the contract is executed and the debtor released. Not so, where the creditor has taken something as collateral. In such case the contract is executory; the creditor has parted with nothing, and

[Dovey's Appeal.]

still holds his grip upon his debtor. Here Moodie paid Erwin $3700 in cash; surrendered to him his (Erwin's) check for $2500, and receipted Erwin's coal bill for $250.83. That this constituted a valuable consideration is sustained by a number of authorities, among which may be mentioned Sinclair v. Healy, 4 Wright 417; Shufeldt v. Pease, 16 Wis. 659, where it was held that "a purchaser of goods from a fraudulent vendee, whose title is voidable on the ground of fraud, who takes them in payment of a pre-existing debt, against said fraudulent vendee, is a purchaser bona fide, and as such is protected in his purchase against a claim to the property made by the party defrauded." Barnett v. White, 34 Miss. 57, where it was held that "when the antecedent debt was extinguished it was a good consideration." Paddon v. Taylor, 44 N. Y. 371; Pratt v. Coman, 37 Id. 440; Brown v. Leavitt, 31 Id. 113; Bank v. Babcock, 21 Wend. 500; Burns v. Rowland, 40 Barb. 368.

It followed that after Dovey's claim is paid in full, the surplus, if any there be after the payment of the expenses of the reference as specified in the decree below, will belong to the appellants in this appeal.

> Decree reversed, and appeal dismissed at the cost of the appellees.