Matter of NEW YORK INVESTORS
MUTUAL GROUP, Inc.,
Bankrupt.

No. B 91347.

United States District Court
S. D. New York.

July 13, 1956.

Levin & Weintraub, New York City, Benjamin Weintraub, New York City, Stanley B. Hendler, Edwin S. Shapiro, New York City, of counsel, for Joaneff Realty Corp.

Asher Bob Lans, New York City, Stanley N. Queler, New York City, of counsel, for Centurion Film Sales, Inc.

Bernard A. Grossman, New York City, for trustee.

WEINFELD, District Judge.

Joaneff Realty Corporation (hereinafter called Joaneff) seeks to review an order of the Referee which approved the action of the trustee in bankruptcy of

New York Investors Mutual Group, Inc. (hereinafter called New York Investors) in disaffirming a contract for the sale of real property, entered into between New York Investors as seller and Joaneff as purchaser; and authorized the trustee to accept the bid of Centurion Film Sales, Inc. (hereinafter called Centurion) to pay $20,000 for the bankrupt's right, title and interest in the property as stipulated in its offer.

The petition for review seeks not only a reversal of the Referee's order in toto but an affirmative direction that the trustee be ordered to assume the contract between the bankrupt and Joaneff.

On October 13, 1954 New York Investors (not then a bankrupt) agreed to sell a plot of ground together with improvements thereon consisting of five buildings located at Third Avenue and 19th Street, New York City, to Joaneff for $105,000, of which $15,000 was paid upon the signing of the contract and the balance of $90,000 was to be paid upon the closing of title some eighteen months later, on April 30, 1956. Title to the property was to be conveyed to Joaneff free of all encumbrances except the "rights of statutory tenants only". The $15,000 paid on account of the purchase price was made a lien on the premises by the terms of the contract which was recorded in the Office of the Register of New York County on October 18, 1954.[1]

At the time of the execution of the contract the East Netherland Holding Corp. (hereinafter called East Netherland) had been the ground lessee of a portion of the property under a long term lease due to expire on April 30, 1956, and as such claimed title to three of the buildings, which the New York Investors agreed by the contract to acquire.

On July 22, 1955, some nine months after the contract had been signed, New York Investors executed and delivered a first mortgage on the premises in the sum of $70,000 to its president who thereupon assigned it to three individuals referred to herein as the Brill group. The mortgage and assignment were duly recorded together with a certificate of consent of at least two-thirds of the stockholders of New York Investors and an estoppel certificate executed by its vice president and secretary certifying to the validity of the mortgage.[2] On the same day, New York Investors assigned to the Brill group as additional collateral for the payment of the mortgage its right, title and interest in and to the balance of the moneys due under the Joaneff contract. The consideration for the mortgage which had been assigned to the Brill group was an advance by it of $65,000, the proceeds of which were used by New York Investors to pay (1) a pre-existing purchase money first mortgage on the premises; (2) a judgment of record against New York Investors; and (3) existing real estate taxes.

On October 5, 1955 an involuntary petition in bankruptcy was filed against New York Investors and following its adjudication as a bankrupt, a trustee was elected.

The trustee instituted proceedings before the Referee challenging the validity of the $70,000 mortgage and the assignment held by the Brill group. He also instituted proceedings to have the rights of East Netherland as tenant under its lease determined and challenged its claim of a lien of $55,000 for the value of the three buildings to which it claims ownership. Both of these proceedings remain undetermined.

During the pendency of the foregoing proceedings the trustee received an offer from Centurion, allegedly identified with the Brill group, of $17,000 (later increased to $20,000) for an assignment of the trustee's right, title and interest to the property, including an assignment of the right, title and interest which the trustee "may have or allege or be entitled to litigate for in and to any of the foregoing properties". In effect, the offer was for a quit claim deed and to take title subject to all encumbrances.

1. McKinney's Consol.Laws N.Y. c. 50, Real Property Law §§ 290, 291.

2. McKinney's Consol.Laws N.Y. c. 59, Stock Corporation Law, § 17.

The trustee petitioned the Referee urging acceptance of the Centurion offer to purchase the property subject to existing encumbrances on the ground that the estate would realize $20,000 net and rid itself of vexatious and expensive litigation with its uncertainty of outcome. Counterwise, he alleged that performance of the Joaneff contract which required delivery of title free of encumbrances would yield a balance of $90,000 to the estate, substantially less than the total of a minimum of $125,000 reflected by the Brill mortgage and the East Netherland claim; therefore his rejection of the Joaneff contract was justified by sound business judgment and should be affirmed.

The Referee agreed with the trustee's general position and approved acceptance of the Centurion offer and so entered the order now under attack.

Section 70, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, reads in pertinent part as follows: "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property * * *. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected."

The trustee took no affirmative action within sixty days of his appointment either to assume or reject the Joaneff contract. Such inaction under the statute clearly constituted a rejection, and the Referee expressly found that the trustee never assumed the contract. The Referee by his order specifically approved such disaffirmance.

Joaneff contends there is no power in the trustee to disaffirm an executory contract for the sale of real property; that as vendee under the contract it is, under New York law, the equitable owner of the property and entitled to specific performance as against the trustee.

Apart from its general attack on lack of power in the trustee to reject an executory real property contract, Joaneff makes other objections which need to be considered. It urges, assuming arguendo power to disaffirm, that the trustee's failure to tender the $15,000 paid on account of the purchase price is fatal to disaffirmance. In advancing this argument Joaneff equates the trustee's power to reject under § 70, sub. b with rescission. In view of the disposition hereinafter made with respect to the $15,000 payment it is unnecessary to pass upon this issue. The Referee found Joaneff had paid the $15,000 to New York Investors without restriction, that the seller co-mingled the cash so received and that any alleged lien as to the deposit was lost in bankruptcy. The Referee found "the lien, *if any,*" (emphasis added) as to the deposit attached only to the real property, since the recorded contract provided that all sums paid on account are made liens on the premises.

This aspect of the Referee's order is somewhat ambiguous since it refers to "the lien, *if any*" (emphasis added). I think it is beyond cavil that by the terms of the contract the vendee has a lien upon the real property for sums paid thereunder which it is entitled to have this Court enforce—this apart from its contention that it also has a lien in bankruptcy. While the Centurion offer is to take the property subject to the lien of the vendee, I do not believe that Joaneff should, as a matter of equity, be left in doubt as to the return of its deposit or be compelled to bring a proceeding to enforce its lien. At a further hearing attended by all the parties, Centurion agreed that any order to be entered, if the Referee's report is upheld, shall include a provision for payment by Centurion to Joaneff of the sums which the latter has paid under the contract, as to which it has a lien on the property by the terms of the contract, plus interest to the date of payment. This of course disposes of Joaneff's contention that the failure of the trustee to tender the return of the deposit is fatal to disaffirmance. It leaves for consideration the basic question as to whether the vendee's rights under the contract are superior to the trustee's right to disaffirm.

■ Stripped to its essentials, the question as I see it is: does a vendee under a contract for the purchase of real property who has made a payment on account of the purchase price to the vendor, who before delivery of the deed is declared a bankrupt, have the right to compel specific performance against the vendor's trustee—or to cast it in different terms, is the vendee's right as an equitable owner of the property superior to the right of a trustee under § 70, sub. b to reject.

In urging that its rights are superior to those of the trustee, the vendee claims that under New York law it not only became the equitable owner of the property but that the vendor retained the naked legal title only as security for the payment of the balance of the purchase price due under the contract.[3]

Section 70, sub. b is all-embracing and makes no distinction between contracts for personalty and those for the sale and purchase of realty but grants power to the trustee to "assume or reject any executory contract, including unexpired leases of real property". Its underlying principle, and that of the case law which preceded its enactment, is that the trustee in bankruptcy may abandon burdensome property and reject unprofitable executory contracts in order to further the best interests of the estate.[4]

■ I am of the view that the vendee's position, which would make this principle inapplicable in the case of executory real property contracts, cannot be upheld—that on the contrary, whatever rights the vendee might have acquired under New York law as an equitable owner of the property,[5] absent an instrument of conveyance, were subject to the right of the trustee to reject or assume executory contracts so as to achieve the overriding purpose of the bankruptcy law to secure an equitable distribution of the assets of the bankrupt.[6] The vendee's equitable title, so long as it remained such, was subject in the event of the vendor's bankruptcy before delivery of the deed to the statutory power of rejection by the trustee. No logical reason exists why a trustee should be free to divest himself of an onerous contract of personalty and yet be compelled to carry the burdens of an undesirable realty contract. Neither the language of the Section nor anything in its legislative history suggests that Congress intended to exclude executory contracts for the purchase or sale of real property from the power granted to a trustee.[7] The unambiguous language of the Section affords no basis to support the view that such contracts were placed in a separate category and were not intended to come within the purview of the statute.[8]

■ The remedy of the vendee upon disaffirmance by the trustee is a claim for damages for breach of the agreement.[9]

Dunlop v. Baker, 4 Cir., 239 F. 193, 195, strongly relied upon by petitioner's counsel, is readily distinguishable. There one Baker, prior to bankruptcy, granted an option to Dunlop to purchase certain real property. Within several days Ba-

---

3. In re Site for Jefferson Houses, 306 N.Y. 278, 117 N.E.2d 896; Elterman v. Hyman, 192 N.Y. 113, 84 N.E. 937.

4. 4 Collier, Bankruptcy 1225-6 (14th ed.)

5. See Professor Williston's criticism of unquestioned acceptance of the equitable title doctrine. 4 Williston, Contracts § 929 (Rev. ed.).

6. See Kuehner v. Irving Trust Co., 299 U.S. 445, 451-452, 57 S.Ct. 298, 81 L. Ed. 340; Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; Kothe v. R. C. Taylor Trust, 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382; District of Columbia v. Greenbaum, 96 U.S.App.D.C.

168, 223 F.2d 633, 636-637; 1 Remington, Bankruptcy, §§ 16, 17 (5th ed.).

7. Section 70, sub. b does include an express provision which preserves the "estate" of a lessee in the event of the trustee's rejection of a lease entered into by a bankrupt lessor. Cf. In re Freeman, D.C.S.D.Ga., 49 F.Supp. 163. However this provision is not pertinent to the case at bar.

8. Cf. In re Marshall's Garage, Inc., 2 Cir., 63 F.2d 759, 761-762.

9. 4 Collier, Bankruptcy 1236-1237; In re Marshall's Garage, Inc., 2 Cir., 63 F.2d 759; 761-762.

ker filed a voluntary petition in bankruptcy. Originally Dunlop petitioned the bankruptcy court for specific performance upon payment only of the balance due under his option. Later he filed an amended petition offering to pay not only the balance so due but in addition "all the debts of the bankrupt and costs of the proceedings". The Circuit Court of Appeals held that under the circumstances there was abundant power in the court to compel specific performance and to grant any other equitable relief. The assumption by Dunlop of all the debts of the bankrupt and administrative expenses in effect removed insolvency and reinstated the bankrupt to his former position so that he was in a position to convey and free of any claim by the trustee. Indeed it may even be argued that by paying the bankrupt's debts Dunlop was subrogated to all his rights and so free to compel a transfer of the property to himself. Moreover, the Court of Appeals inferentially at least recognized the superior right of the trustee against Dunlop when it stated: "It is true that bankruptcy had supervened, but that had no other effect than to place the property in the hands of the bankruptcy court, with a lien on it for the debts of the bankrupt and the costs superior to the claim of Dunlop. Nothing but this lien stood between Dunlop and his right to a conveyance of the land upon payment of the purchase money agreed upon. It follows that, when he offered to pay a sum in addition to the agreed price sufficient to satisfy the claims superior to his own, he was entitled to the land."

Thus not only is the case readily distinguishable on the facts but if anything gives support to the trustee's position.

Independent research by the Court has disclosed an English authority bearing similarity to the facts at bar and supporting the vendee's position, but which the Court for reasons hereinafter stated does not deem controlling. In In re Bastable [1901] 2 K.B. 518 (C.A.),[10] the vendor entered into a contract for the sale of a 93 year lease on certain real property, the purchaser paying a substantial deposit upon the execution of the contract. Prior to the delivery of title to the lease the vendor was adjudicated a bankrupt and a trustee was appointed. The trustee decided that completion of the sale was unprofitable to the estate and in accordance with the then current English Bankruptcy Act he formally disclaimed the contract. The purchaser objected to the disclaimer on the ground that by virtue of the contract he was vested with the equitable estate in the leasehold and could not be divested of this estate by the trustee disclaiming the contract. The court accepted this argument on the ground that the Bankruptcy Act[11] did not authorize a disclaimer that would have the effect of divesting an equitable estate in realty. Apparently the court relied on the statutory provision that disclaimer of

10. See also, Melville, Disclaimer of Contracts in Bankruptcy, 15 Mod.L.Rev. 28 (1952).

11. "(1) Where any part of the property of the bankrupt consists of land of any tenure burdened with onerous covenants, of shares of stock in companies, of unprofitable contracts, or of any other property that is unsalable, or not readily saleable, by reason of its binding the possessor thereof to the performance of any onerous act, or the payment of any sum of money, the trustee, notwithstanding that he has endeavoured to sell or has taken possession of the property or exercised any act of ownership in relation thereto, but subject to the provisions of this section, may, by writing signed by him, at any time within twelve months after the first appointment of a trustee, disclaim the property. * * *

"(2) The disclaimer shall operate to determine, as from the date of disclaimer, the rights, interests, and liabilities of the bankrupt and his property in or in respect of the property disclaimed, and shall also discharge the trustee from all personal liability in respect of the property disclaimed as from the date when the property vested in him, but shall not, except so far as necessary for the purpose of releasing the bankrupt and his property and the trustee from liability, affect the rights and liabilities of any other person." Bankruptcy Act, 1883 § 55, as amended.

a contract "shall not \* \* \* affect the rights and liabilities of any \* \* \* person" other than the bankrupt and the trustee, for the court did recognize that under a statute not so restricted, disclaimer by the trustee could divest a purchaser of his equitable estate. Section 70, sub. b which authorizes the trustee to disaffirm *any* executory contract and which contains no saving clause with respect to contracts for the sale of realty patently distinguishes this case from the case at hand.[12]

■■ Finally Joaneff urges that if in fact the power to disaffirm exists, it is contrary to the best interests of the estate to reject its contract. It contends that acceptance of the Centurion offer was improvident and that the Referee's order approving the same should be rejected. To overcome the Referee's order it must be established that his findings were clearly erroneous.[13] And in this instance there is involved a matter of business judgment and discretion which will not be disturbed unless there is a clear abuse of discretion. While the trustee has attacked the validity of the Brill mortgage he suggests that the use of the funds advanced by the Brill group to pay off a pre-existing mortgage, a judgment of record and real estate taxes, does not augur that success will crown his efforts. In the instance of the East Netherland claim he appears more hopeful. Here the basic issue is whether as ground lessee East Netherland is entitled to a specific lien on the properties for the value of its buildings or is to be relegated to the status of a general creditor. Opposing counsel advance authorities allegedly supporting either position.

The trustee, as already pointed out, is apprehensive that if he fails in his attack upon the Brill mortgage and the East Netherland claim and is compelled to affirm and consummate the sale of the property to Joaneff it will involve the estate in substantial losses, since the balance of $90,000 payable by Joaneff falls far short of the claims which would have to be paid before the title required under the contract could be conveyed to Joaneff. Satisfaction of the Brill mortgage alone would require $70,000 plus $3,000 accrued interest to July 22, 1956, its maturity date, and accelerated interest thereafter at the rate of 2% per month. In addition the claim of East Netherland is asserted to be $55,000 although there is, as noted, a sharp dispute both as to amount and its right to a lien on the property; further, acceptance of the Joaneff contract would require payment of a brokerage fee of $2,675 as well as the expenditure of a substantial sum to dispossess tenants (other than statutory tenants). On the other hand, acceptance of the Centurion $20,000 offer in return for the trustee's quit claim deed eliminates all risk incidental to an adverse determination of the pending litigation since Centurion takes the property subject to the Brill mortgage, the rights of East Netherland and the rights of all tenants (statutory and otherwise). Thus the trustee contended that acceptance of the Centurion offer meant certainty of gain to the estate and assumption of the Joaneff contract meant uncertainty and even prospect of substantial loss.

■ Upon a careful review of all relevant factors, I do not find any basis upon which it can be stated that the Referee's determination is clearly erroneous or was such an abuse of discretion as to require a reversal.

Accordingly the petition for review is denied and the Referee's order upheld, except to the extent that the order to be entered herein shall provide specifically that Centurion as a condition of the delivery of the deed to it by the trustee shall repay to Joaneff $15,000, plus the expense of title examination, if any, as to which it also was entitled to a lien under the contract, together with interest to the date of payment.

Settle order on notice within five days from the date hereof.

12. Cf. National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97.

13. 2 Collier, Bankruptcy ¶39.28 (14th ed.) (and cases there cited).