**In re Edward M. PRIBONIC and Andrea E. Pribonic, Debtors.**

**Robert J. and Margaret M. RUSISKI, Movants,**

**v.**

**Edward M. PRIBONIC and Andrea E. Pribonic, Respondents.**

**Bankruptcy No. 85–2971PGH. Motion No. 86–1417.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 5, 1987.

Louis B. Swartz, Pittsburgh, Pa., for movants Robert J. and Margaret M. Rusiski.

John P. Vetica, Jr., Pittsburgh, Pa., for debtors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

The Rusiskis filed a Motion for Relief from the Automatic Stay to enforce a pre-petition decree issued by the Court of Common Pleas of Allegheny County ordering specific performance of an agreement of sale for real property between the Rusiskis, as vendees, and the debtors, as vendors. The debtors contend that whatever interest the Rusiskis may have had in the subject property prior to the commencement of this case is avoidable in bankruptcy under either § 365(a) (rejection of executory contracts) or § 522(f) (avoidance of judicial liens). For the reasons discussed below,[1] we disagree with the debtors and hold that the Rusiskis are equitable owners of the subject property and are entitled to relief from the automatic stay under § 362(d)(2) to obtain enjoyment of their rights of ownership.

### Jurisdiction

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania, dated October 16, 1984, entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

### Facts

The debtors, husband and wife, filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 27, 1985.

On December 2, 1978, the debtors, as vendors, entered into an agreement of sale ("Sales Agreement") with Robert J. Rusiski and Margaret M. Rusiski, his wife, (the "Rusiskis"), as vendees, for a two acre lot of real estate with improvements thereon (the "Property"). At the closing, a dispute arose over the interpretation of a provision in the Sales Agreement that granted certain easement rights across the Property. The parties were unable to amicably resolve their dispute, and the sale was never consummated. Thereafter, the Rusiskis commenced an action in the Court of Common Pleas, Allegheny County, Pennsylvania, for specific performance of the Sales Agreement.

On February 4, 1982, the Court of Common Pleas, sitting as a Court of Equity, issued an opinion and final decree for specific performance of the Sales Agreement (the "Decree"). The debtors appealed to the Superior Court of Pennsylvania, which affirmed the Decree with an opinion and order of court dated March 30, 1984. The debtors then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was granted.

While the Pennsylvania Supreme Court was considering the Rusiskis' appeal, the debtors filed their Chapter 7 petition. On March 18, 1986, the Rusiskis filed a Motion for Relief from Stay ("Motion") requesting an order allowing them to enforce their Decree. A hearing was held on May 19, 1986. Because a reversal of the Decree by

---

1. This Opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052, as made applicable to this contested matter by Bankruptcy Rule 9014.

the Pennsylvania Supreme Court would have mooted the Rusiskis' Motion, we issued an order continuing the Rusiskis' Motion pending a final decision by the Pennsylvania Supreme Court.

On September 25, 1986, the Pennsylvania Supreme Court affirmed the lower court's Decree [2] and on October 1, 1986, we revived the Rusiskis' Motion for Relief from Stay. After consideration of the parties' briefs, we addressed the following relevant issues:

### Issues

1. Recognizing that the Rusiskis possessed an equitable ownership interest in the Property under the doctrine of equitable conversion prior to this bankruptcy, is their equitable ownership interest in the Property avoidable in bankruptcy so as to deprive them of standing to request relief from the automatic stay under § 362(d)(2)? [3]

A. Is the Rusiskis' equitable ownership interest in the Property avoidable on the ground that the Sales Agreement, which gave rise to their equitable ownership under the doctrine of equitable conversion, is an executory contract that was deemed rejected in bankruptcy under § 365(d)(1)?

B. Is the Rusiskis' equitable ownership interest in the Property avoidable on the ground that the Decree transformed the Rusiskis' equitable ownership interest into a "judicial lien" which may be avoided under § 522(f)?

2. If the Rusiskis have an unavoidable interest in the Property and thus have standing under § 362(d)(2), are they entitled to relief from the automatic stay on the merits to enforce their Decree?

### Discussion

The Rusiskis request relief from the automatic stay pursuant to § 362(d)(2) on the ground that the debtors have no equity in the Property and that the Property is not necessary to an effective reorganization. Alternatively, the Rusiskis seek relief from the stay for "cause" under § 362(d)(1). Of course, the Rusiskis must have an interest in the Property, legal or equitable, to have standing to assert a Motion under § 362(d)(2).

The debtors argue that the Rusiskis are not entitled to relief from stay because the Rusiskis have no interest in the Property. The Rusiskis have no interest in the Property, the debtors argue, for two reasons. First, the Sales Agreement, which embodies the Rusiskis' equitable ownership interest, is an executory contract that was deemed rejected pursuant to § 365(d)(1) when it was not assumed within 60 days of the commencement of this bankruptcy case. Rejection of the Sales Agreement, according to the debtors, vitiated the Rusiskis' ownership interest in the Property. Hence, the debtors conclude, the Rusiskis are simply holders of an unsecured claim under § 365(g)(1). Alternatively, the debtors argue that the Decree created a "judicial lien" which impairs the debtors' exemption and therefore is avoidable under § 522(f). When the lien is avoided, the debtors argue, so too is the Rusiskis' interest in the Property. If either of the debtor's theories is valid, the Rusiskis would not have an interest in the Property, and

---

**2.** The Court of Common Pleas granted the Rusiskis specific performance. In addition, the court awarded the Rusiskis $48,852.00 in damages (reduced to present value) as collateral relief to compensate the Rusiskis for losing the opportunity to obtain financing for the purchase at a lower interest rate in 1979 (the original closing date) due to the debtors' refusal to consummate the sale on the original closing date. The Pennsylvania Supreme Court disagreed with the lower court's calculation and award of consequential damages, and therefore reversed and remanded to the Court of Com-

mon Pleas to enter a decree of specific performance in conformance with the Supreme Court's opinion. Any money judgment for consequential damages would be a dischargeable debt, and the Supreme Court's disposition of the damages question, therefore, has no bearing on the outcome of the Rusiskis' Motion for Relief from Stay.

**3.** Unless otherwise specified, all citations in this opinion are to the current Bankruptcy Code, 11 U.S.C. § 101 et seq.

therefore would not have standing to assert their § 362(d)(2) Motion.

In part I of this Opinion, we conclude that, when the parties executed the Sales Agreement prior to the bankruptcy, the Rusiskis became equitable owners of the Property pursuant to the doctrine of equitable conversion. In parts IA, B and C, we discredit for three separate reasons the debtors' contention that the Sales Agreement is an executory contract. We therefore reject the debtors' argument that the Rusiskis' interest in the Property can be avoided by rejecting the Sales Agreement under § 365(d)(1). In part II, we reject the debtors' alternative contention that the Decree transformed the Rusiskis' equitable ownership interest in the Property into a lien on the Property. We therefore conclude that the Rusiskis' interest in the Property cannot be avoided as a "judicial lien" under § 522(f). Having concluded that the Rusiskis possess an unavoidable ownership interest in the Property, and thus have standing under § 362(d)(2), we conclude in part III that the Rusiskis are entitled to relief from the automatic stay on the merits to enforce their Decree.

## I.

### Non-Executory Nature of the Sales Agreement

Preliminarily, we define "agreement of sale" as that term is understood in Pennsylvania:

> [A]n agreement of sale may be defined as an agreement or contract in writing by which one party agrees to sell to another who agrees to buy certain real property under the terms and conditions set forth in the agreement.

Ladner on Conveyancing in Pennsylvania, ("Ladner") 4th ed. vol. 1 § 6.02, p. 3.

We also note preliminarily that when the parties executed the Sales Agreement, the Rusiskis became equitable owners of the Property pursuant to the doctrine of equitable conversion. *McCannon v. Marston*, 679 F.2d 13, 15 (3rd Cir.1982) (and cases cited therein). We now turn to a discussion of whether the Sales Agreement is a rejectable executory contract.

## A.

Disregarding the legal effect of the Decree on the Sales Agreement, the debtors strenuously argue that the Sales Agreement is executory. However, the debtors' argument contains more passion than precision. At issue is not the executory nature of a mere agreement of sale. The instant Sales Agreement has been buttressed by a final decree for specific performance which, under Pennsylvania law, carries with it certain significant legal consequences. We therefore reject the debtors' contention, expressed in their answer to the Motion, that "any reference to the action for specific performance is deemed to be irrelevant and immaterial in light of the fact that Movants are general unsecured creditors." Indeed, we find it inconsistent for the debtors to disavow the relevancy of the Decree in their executory contract argument, and then expressly rely on the Decree in their alternative argument as having created an avoidable judicial lien. Proper analysis of the executory nature of the Sales Agreement requires consideration of the effect of the Decree. For this reason, the debtors' heavy reliance on *In re Alexander*, 670 F.2d 885 (9th Cir.1982) (prepetition contract for the sale of real property held to be executory) is misplaced. Significantly, there was no prepetition decree for specific performance in *Alexander*. Therefore, *Alexander* is factually distinguishable from the instant dispute.

Taking into consideration the existence of the Decree, the narrow issue is: assuming *arguendo* that the Sales Agreement was executory standing alone, did the Sales Agreement remain executory for purposes of § 365(a) after the Rusiskis obtained a prepetition Decree for specific performance, even though as of the commencement of this bankruptcy case the Decree had not been enforced and implemented to the point where a deed had been transferred to the Rusiskis? We conclude that the Sales Agreement did not remain executory. *See*

*In re Kendall Grove Joint Venture,* 46 B.R. 531 (Bankr.S.D.Fla.1986), *aff'd.,* 59 B.R. 407 (S.D.Fla.1986). *See also In re Meehan,* 46 B.R. 96 (Bankr.E.D.N.Y.1985), *aff'd.,* 59 B.R. 380 (E.D.N.Y.1986).

In *Kendall,* the debtor-vendor entered into a prepetition sales agreement for a parcel of real property. Prior to the debtor's involuntary bankruptcy, the prospective purchaser obtained a final decree for specific performance of the sales agreement. While in bankruptcy, the debtor sought to avoid its obligations under the sales agreement by arguing that the sales agreement was an executory contract subject to rejection under 365(a). The Bankruptcy Court concluded that the sales agreement was not executory and therefore not subject to rejection in bankruptcy. *In re Kendall Grove Joint Venture,* 46 B.R. 531, 533 (Bankr.S.D.Fla.1986).

On appeal to the District Court, the sole issue was "whether a contract to sell real property remains 'executory' for the purposes of § 365(a) after the vendee has obtained a decree for specific performance, but before that decree has been enforced and implemented to the point where title has passed." *Kendall,* 59 B.R. at 408. The District Court, affirming the Bankruptcy Court, held that the sales contract was not executory. *Id.*

The District Court began its analysis by quoting with approval the oft-cited Countryman definition of an executory contract:

[An executory contract is] a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other.

*Id.* The court then considered the "important" effect of the specific performance decree on the debtor's performance obligations under the contract for sale. *Id.* at 409.

In holding that the sales agreement was non-executory, the District Court relied heavily on the Bankruptcy Court's finding that the debtor's only future obligation under the sales agreement was "ministerial": delivery of title in accordance with the specific performance decree. *See Id.* This finding (that the vendor's only remaining obligation under the sales agreement was "ministerial") in essence was a finding that the vendor's only remaining future obligation was so far performed already that the failure to perform the final "ministerial" act (transer of title) would *not* constitute a material breach that would excuse the purchaser from performing *his* future obligations under the sales agreement. Under the Countryman definition, then, the sales agreement was not executory.

The District Court in *Kendall* could have affirmed the Bankruptcy Court's decision without going any further. However, the court continued on to what appears to have been an alternative holding. The District Court cited Florida Rule of Civil Procedure § 1.570, which provides in relevant part:

When a judgment is made for a conveyance, ... of land ... and the party against whom the judgment is entered does not comply therewith by the time prescribed, then such judgment shall be considered to have the same operation and effect as if the conveyance, ... had been executed to it....

*Id.* at 409. The District Court interpreted Rule 1.570 to mean that when the specific performance decree was entered, the conveyance was deemed executed. Thereafter, the debtor-vendor had *no* future obligations to perform under the sales contract, and thus the contract was executed, not executory. *Id.*

It is unclear whether the District Court in *Kendall* held (1) that the vendor had *no* remaining future obligations because Rule 1.570 executed the sales agreement by operation of law, or (2) that the vendor did have a future obligation, albeit a "ministerial" one, the non-performance of which would not constitute a material breach that would excuse the purchasers remaining performance obligations. In either event, however, the sales contract would no longer be executory under the Countryman definition. Therefore, both of the court's hold-

ings were analytically supportable under the Countryman definition of "executory contract."

The issue presented in *Kendall* is precisely the issue before us now. Moreover, Pennsylvania has a rule of civil procedure that is substantially similar to Florida Rule 1.570. Pennsylvania Rule of Civil Procedure 1529(b) (Equity Actions) provides:

> (b) Where appropriate, the court may order the prothonotary or sheriff to perform any act which a party fails to perform within the time specified by the order or decree. The designated officer shall act in the name of and for the delinquent party and with the same effect as though the act were performed by him. The court may order the recording or registration of any document thus executed and tax the costs against the delinquent party.

42 Pa.Cons.Stat.Ann. Rule 1529(b) (Purdon 1975).

■ When the Rusiskis obtained their Decree, the debtors essentially had no further obligation to perform in the future since Pennsylvania Rule of Civil Procedure 1529(b) authorized the Prothonotary or Sheriff to perform the debtor's only remaining obligation: delivery of title. Therefore, under the Countryman definition and the reasoning of *Kendall*, the instant Sales Agreement is non-executory.

It may be argued that Pennsylvania Rule 1529(b) only *empowers* the Sheriff or Prothonotary to transfer title, and that until title is actually transferred, the debtors still have a future obligation under the Sales Agreement to transfer title. However, even if the debtors still have a future obligation under the Sales Agreement to transfer title, we alternatively hold that the debtors' failure to transfer title at this time would not be a material breach that would excuse the Rusiskis' performance under the Sales Agreement. In view of the ready availability of a court-ordered transfer of title pursuant to Rule 1529(b), the Rusiskis' failure or refusal to convey title at this point would be a non-material breach that would not excuse the Rusiskis' perform-

ance under the sales agreement. Therefore, the sales agreement is not executory.

## B.

■ There is a second reason for concluding that a prepetition agreement of sale fortified by a decree for specific performance is non-executory for purposes of § 365. To participate in a bankruptcy distribution, a person must have a "claim" as that term is defined by § 101(4). As is evident from the language of § 101(4), the Bankruptcy Code recognizes a "claim" only if it can be reduced to money:

> 101(4) "claim" means—
>
> (A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (emphasis added)

Where a creditor holds a right to an equitable remedy for breach of performance (e.g., a decree for specific performance of a land sale contract), that person will have a "claim" for bankruptcy purposes *only if* the specific performance decree may be satisfied by an alternative award of monetary damages. *See* § 101(4)(B). As the legislative history of § 101(4)(B) explains:

> This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some states, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event, the creditor entitled to specific performance would have a "claim".... [for bankruptcy purposes] ... on the oth-

er hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" . . .

124 Cong.Rec.H. 11,090 (Sept. 28, 1978); 124 Cong.Rec.S 17,406 (Oct. 6, 1978).

Our research has disclosed no Pennsylvania law that permits a land contract vendor to satisfy a decree for specific performance *either* by paying damages *or* performing the contract. This is not to say that an aggrieved land contract vendee may not elect to sue at law for damages or in equity for specific performance in certain situations. However, once the vendee has elected to sue for specific performance and the court has issued a decree, there has been a judicial determination that the vendee had, and has, no adequate remedy at law. *See Portnoy v. Brown,* 430 Pa. 401, 243 A.2d 444, 446 (1968) ("decree of specific performance will not be granted unless plaintiff is clearly entitled thereto and no adequate remedy at law exists.") Therefore, after a decree for specific performance has been issued, a vendor-defendant *could not* have the option of paying damages; the court has determined the *only* adequate remedy to be specific performance of the contract. So conclusive is the court's determination that no adequate remedy at law exists, that Rule 1529(b) empowers the Sheriff or Prothonotary to do what is necessary to effectuate the *only* remedy adequate to the aggrieved purchaser: specific performance of the transfer of title. It is clear, then, that in Pennsylvania, an aggrieved land contract vendee who holds a decree for specific performance has an equitable remedy that does *not* give rise to a right to payment. Therefore, such vendees do not and technically cannot hold a "claim" for bankruptcy purposes.

Taking the analysis one step further, if the instant sales agreement is executory and deemed rejected under § 365(d), the debtors will be deemed to have breached the Sales Agreement prepetition. *See* § 365(g)(1). Paradoxically, however, the breach will not give rise to a "claim" for bankruptcy purposes. Accordingly, upon rejection, the debtors will be relieved from having to specifically perform the Sales Agreement, but the aggrieved Rusiskis will have no right to participate in any bankruptcy distribution.

We find nothing in the Bankruptcy Code that mandates such a harsh and inequitable result.

**C.**

■ Our third reason for concluding that the instant Sales Agreement is not executory for purposes of rejection in bankruptcy is premised on the nature of the relationship between land contract vendors and vendees under Pennsylvania law.

Under Pennsylvania law, the relationship between a land contract vendor and vendee is analogous to that of a mortgagee and mortgagor. Upon execution of the land sale contract, the doctrine of equitable conversion vests the land contract vendee with equitable title to the real estate, *McCannon v. Marston,* 679 F.2d 13, 15 (3rd Cir. 1982), citing, *Allardice v. McCain,* 375 Pa. 528, 101 A.2d 385 (1953); *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A.2d 85 (1949); *Ladner,* at § 6.10. The land contract vendor, on the other hand, retains legal title to the real estate as security for payment of the purchase price. *DiDonato v. Reliance Std. Life Insur. Co.,* 433 Pa. 221, 249 A.2d 327 (1969). *See also In re Love,* 38 B.R. 771, 774 (Bankr.D.Mass.1983) ("The vendor's interest is a 'security title' which has all the incidents of a mortgage and constitutes a charge against the subject land for the purchase price."), citing, *Vogel v. Northern Assurance Co.,* 219 F.2d 409 (3rd Cir. 1955); *Anderson Contracting Co. v. Daugherty,* 417 A.2d 1227, 274 Pa.Super. 13 (1979). Because in such situations the land contract vests the vendor with a lien on the real property, the land contract is merely a financing arrangement. For this reason, many courts have held such land contracts to be security devices, not executory contracts. *See In re Britton,* 43 B.R. 605 (Bankr.E.D.Mich.1984). *See also*

*In re Jones,* 54 B.R. 697 (Bankr.E.D.Ark. 1985); *Matter of Cox,* 28 B.R. 588 (Bankr. Idaho 1983).

The *Britton* case aptly illustrates this view. In *Britton,* the purchasers under a prepetition land contract filed a motion to compel the debtor-vendor to assume or reject the land contract pursuant to § 365. The issue before the court was whether land contracts in Michigan were executory contracts for purposes of § 365. *Britton,* 43 B.R. at 606.

The court began by noting that generally the nature of the relationship between land contract vendors and vendees is a matter to be determined by the law of the state in which the relationship arises. *Id.* at 606. The court then cited Michigan law (identical to the law of. Pennsylvania) to the effect that:

> it is well settled in this state that the vendee in a land contract is vested with the equitable title in the land and that the *legal title* remains in the vendor and *is held as security for the payment of the purchase price* of the land, upon the payment of which the vendee is entitled to a conveyance of the legal title.

*Id.* at 607 (emphasis in original) (citations omitted). Concluding on the basis of Michigan law, as well as on the Bankruptcy Code definition of "lien" [§ 101(31)], that the vendor had a lien on the subject property, the court held that the lien created by a land contract precluded classification of the contract as executory. *Id.* at 608. Accordingly, the court denied the motion to assume or reject the land contract, thereby leaving the contract valid and enforceable in bankruptcy. *Id.* We find *Britton* persuasive, and adopt its reasoning.

Although not raised by the debtors, we advert to a Third Circuit Court of Appeals decision which, upon a cursory reading, appears to support the debtors' position. *See In re Philadelphia Penn Worsted Co.,* 278 F.2d 661 (3rd Cir.1960). Upon close scrutiny, however, it is clear that *Penn Worsted* is factually distinguishable from the instant set of facts.

In *Penn Worsted,* the debtor, prior to bankruptcy, made a general assignment of certain real property for the benefit of creditors to one Hurwitz, as assignee. Hurwitz put the real estate up for auction through an auctioneer who "knocked down" the property to the prospective vendees. Thereafter, the auctioneer, as authorized agent for Hurwitz, entered into an agreement of sale with the prospective vendees. Prior to consummation of the sale, the debtor was adjudicated an involuntary bankrupt under the former Bankruptcy Act. *Penn Worsted,* 278 F.2d at 662.

The prospective vendees subsequently petitioned the District Court (which presumably took jurisdiction of the bankruptcy case initially) for leave to consummate the sale on the terms embodied in the agreement of sale. The District Court, however, held that the bankruptcy receiver was not bound by the prior public auction, and entertained higher offers, over the prospective vendees' objections. After new bidding, the District Court ordered the property sold to the prospective vendees as the successful bidders, albeit at a higher price than was agreed to by the parties in the earlier agreement of sale. Thereafter, the property was conveyed to the prospective vendees.

The vendees appealed the District Court's denial of their request to consummate the sale at the price knocked down at the prepetition auction. The bankruptcy receiver argued that he was not bound by the prior public sale because the sales agreement that embodied the original sale price was a rejectable executory contract. The vendees on the other hand, argued that when they executed the sales agreement, they became equitable owners of the property, and therefore the sales agreement was not an executory contract subject to rejection. *Id.* at 664.

In rejecting the vendees' equitable ownership argument, the court of appeals relied on the reasoning of *In re New York Investors Mutual Group,* 143 F.Supp. 51 (S.D.N.Y.1956), and concluded that "the doctrine of equitable conversion does not

operate to make the vendee's right as an equitable owner superior to the right of a trustee . . . to reject the executory contract on which vendee's right is based." *Penn Worsted,* 278, F.2d at 664.

The reasoning employed by the court in *New York Investors* is reproduced in the following excerpt:

> I am of the view that the vendee's position, which would make this principle [of rejection] inapplicable in the case of executory real property contracts, cannot be upheld—that on the contrary, *whatever rights the vendee might have acquired under New York law as an equitable owner of the property, absent an instrument of conveyance, were subject to the right of the trustee to reject or assume executory contracts* so as to achieve the overriding purpose of the bankruptcy law to secure an equitable distribution of the assets of the bankrupt. The vendee's equitable title, so long as it remained such, was subject in the event of the vendor's bankruptcy before delivery of the deed to the statutory power of rejection by the trustee. No logical reason exists why a trustee should be free to divest himself of an onerous contract of personalty and yet be compelled to carry the burdens of an undesirable realty contract. Neither the language of the Section nor anything in its legislative history suggests that Congress intended to exclude *executory* contracts for the purchase or sale of real property from the power granted to a trustee . . . *The remedy of the vendee upon disaffirmance by the trustee is a claim for damages for breach of the agreement.*

*New York Investors,* 143 F.Supp. at 54 (footnotes omitted) (emphasis added).

The underlined language, the crux of the court's reasoning, merely posits that a purchaser's equitable ownership right, *if embodied in a prepetition executory contract,* may be lost in bankruptcy upon rejection of the executory contract. From that premise, the court in *New York Investors* concluded that the purchaser's eq-

uitable ownership rights, which were created by and contained in the executory sales agreement, could be vitiated in bankruptcy upon rejection of the sales agreement. Assuming *arguendo* that the court's initial premise was correct, its conclusion logically followed *assuming as the court clearly did,* that the sales agreement in *New York Investors* was executory.

However, unlike the sales agreements at issue in *Penn Worsted* and *New York Investors,* the instant Sales Agreement was not executory as of the commencement of the bankruptcy. In neither *Penn Worsted* nor *New York Investors* did the courts make a finding that the respective sales agreements were fortified by a prepetition decree for specific performance. Significantly, in the instant case, the prepetition decree for specific performance triggered the operation of Pennsylvania Rule of Civil Procedure 1529(b), which in turn transformed the type of mere executory land sales agreements at issue in *New York Investors* and *Penn Worsted* into an executed contract. Therefore, the holdings of *Penn Worsted* and *New York Investors* —that a purchaser's equitable ownership right, *if embodied in a prepetition executory contract,* may be lost in bankruptcy upon rejection of the executory contract— has no application where, as here, the sales agreement embodying the equitable ownership right is not executory. Since the instant facts are readily distinguishable, our holding today is consistent with the holdings of *Penn Worsted* and *New York Investors.*

That our holding is consistent with the holdings of *Penn Worsted* and *New York Investors* is further supported by the quote from *New York Investors* that "The remedy of the vendee upon disaffirmance by the trustee is a claim for damages for breach of the agreement." *New York Investors,* 143 F.Supp. at 54. We completely agree. The vendee in *New York Investors* did not have an equitable remedy pursuant to a prepetition decree for specific performance; that vendee simply had a monetary claim at law for breach of contract, which is clearly

a "claim" within the meaning of § 101(4)(A).[4] The Rusiskis' situation is different. The Rusiskis have a right to an equitable remedy which does *not* give rise to a right to payment at law. (See part IB of this Opinion.) Hence, under § 101(4)(B), they do not have a "claim" for bankruptcy purposes. Therefore, if their right to an equitable remedy is embodied in what is deemed to be an executory contract, and that executory contract is rejected, they, unlike the vendee in *New York Investors,* will *not* be holders of a "claim" for purposes of a bankruptcy distribution. Thus, *New York Investors* is clearly distinguishable from the instant case.

We further observe that the court in *Penn Worsted* could have declined to be bound by the prepetition auction sales price without relying on an executory contract analysis. The vendee in *Penn Worsted* had not recorded the prepetition agreement of sale and had not taken possession of the property as of the commencement of the bankruptcy case. Under Pennsylvania recording laws, an unrecorded agreement of sale is "adjudged fraudulent and void as to any subsequent ... holder of any judgment, duly entered in the prothonotary's office ... without actual or constructive notice ... Pa.Stat.Ann. tit. 21 § 351 (Purdon 1955)." Pursuant to § 70(c) of the former Bankruptcy Act, the predecessors of § 544(a) (the "strong arm clause"), the trustee in bankruptcy had the rights and powers of a judicial lien creditor under state law as of the commencement of the bankruptcy case. Therefore, the trustee could have avoided the prepetition agreement of sale and requested a new auction under § 70(c).

For the reasons discussed in parts IA, B and C, we hold that the instant Sales Agreement is not executory and thus is not rejectable in bankruptcy. Therefore, the debtors may not eliminate the Rusiskis' standing under § 362(d)(2) by eliminating the Rusiskis' ownership interest under § 365(d)(1).

**4.** *See* § 101(4)(A) *supra* p. 11.

## II.

### *Judicial Lien Theory*

The debtors' alternative theory is that the Decree for specific performance created a "judicial lien" on the Property which impairs the debtors' exemption and therefore is avoidable pursuant to § 522(f). The debtors assume first that the Decree created a lien on the Property and second that the lien is a "judicial lien" as that term is defined by § 101(30). Both assumptions are erroneous.

First, the Rusiskis' interest in the Property, as we explained earlier, is an equitable ownership interest, not a lien. Section 522(f) may only be used to avoid liens, specifically judicial liens; ownership interests may not be avoided under § 522(f). Therefore, the debtors may not employ § 522(f) to defeat the Rusiskis' ownership interest in the Property.

Our conclusion that the Rusiskis' interest is not a lien is not altered by the existence of the Decree. The debtors argue that the Decree created a "lien," as that term is defined in § 101(31), and that because the "lien" was obtained by an "equitable process or proceeding," (the equity court action for specific performance) the "lien" is a "judicial lien" under § 101(30) which may be avoided under § 522(f).

The most conclusive response to the debtors' argument is that the Decree for specific performance did not *create* either a lien or an equitable ownership interest. The Decree only *confirmed* the legal effect of the Sales Agreement. *See Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507, 512 (1986). ("[T]he nature of the jurisdiction of the court when decreeing specific performance of a contract ... is to *confirm the contract* and erase the breach and to restore the parties as nearly as possible to the positions they occupied before the breach.") (emphasis added). As we have concluded, execution of the Sales Agreement vested the Rusiskis with equitable ownership, not a lien. The Decree con-

firmed that fact; it did not transform the Rusiskis' equitable ownership into a lien. Since the Rusiskis do not have a lien on the Property, it follows *a fortiori* that they cannot have a "judicial lien" on the Property. Therefore, the debtors' argument under § 522(f) is unavailing.

## III.

### *Relief from Stay*

 Having concluded that the Rusiskis hold an ownership interest in the Property which may not be avoided under § 365(d)(1) or § 522(f), we turn to the issue of whether they are entitled to relief from the automatic stay. The Rusiskis allege that they are entitled to relief from stay under both § 362(d)(1) and § 362(d)(2).

Pursuant to § 362(d)(2), the court shall grant relief from the automatic stay to one who has an interest in property of the estate if:

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

If both elements are satisfied, the court is required to grant relief from stay. There is no provision for judicial discretion.

Schedule A–2 of the debtors' bankruptcy schedules, of which we take judicial notice pursuant to Federal Rule of Evidence 201, lists the Property as having a market value of $99,000.00. The Property is encumbered by a first mortgage in the amount of $64,-904.48 and a second mortgage in the amount of $44,300.00 for a total of $109,-204.84. It is clear, therefore, that there is no equity in the Property for the debtors. It is equally clear that since this is a Chapter 7 case, the Property is not necessary to an effective reorganization. Therefore, the Rusiskis are entitled to relief from the automatic stay under § 362(d)(2).

Because we have concluded that the Rusiskis are entitled to relief from the automatic stay under § 362(d)(2), we need not determine whether relief is available for "cause" under § 362(d)(1).

### Conclusion

For the reasons discussed above, the Rusiskis' Motion for Relief from Stay will be granted by separate order.