In re JOSEPH M. EATON
BUILDERS, INC., Debtor.

James A. LEWIS, Esq.
Trustee, Plaintiff,

v.

Thomas J. & Linda M.
DIETHORN, Defendants.

Bankruptcy No. 87–00765.
Adv. No. 87–0359.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 6, 1988.

James A. Lewis, James F. Hartzell, Pittsburgh, Pa., for trustee.

J. Kerrington Lewis, Lee Markovitz, Pittsburgh, Pa., for Diethorns.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter presently before the Court is a Complaint For Avoidance and Recovery for Preferential Transfer filed by the Chapter 7 Trustee, James A. Lewis, Esq., (hereinafter Trustee), against Thomas J. and Linda M. Diethorn (hereinafter Defendants). This is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

Trial commenced on January 26, 1988, the record was reopened, and a hearing was held on September 30, 1988, to permit Defendants to submit evidence in support of their contention that the amounts they paid Debtor for improvements to real estate increased the value of the property and that they were entitled to an equitable lien against the property. Based upon the testimony and evidence produced at trial and the applicable law, the Court finds that the transaction at issue was an avoidable preferential transfer.[1]

---

1. In his post-trial brief, Trustee advanced an argument under 11 U.S.C. § 548(a)(1) which section sets forth the Trustee's power to avoid a transfer made with actual intent to hinder, de-

## FACTS

On or before April 4, 1985, Joseph M. Eaton Builders, Inc. (hereinafter Debtor) as seller, and Defendants, as buyers, executed an agreement with respect to realty located on Springhouse Drive[2] in Jefferson Borough, Allegheny County, Pennsylvania, pursuant to which Debtor was to construct a residence. The total purchase price was $182,400.00. Defendants paid $3,000.00 earnest money to Country Hills Real Estate, the selling agent, secured a mortgage commitment, which was revoked later, and paid Debtor $31,514.25[3] which included $22,600.00 for certain permanent improvements to the realty made at the request of Defendants. The parties stipulated that the value of the real estate was thereby increased $22,600.00. The remainder was spent for items personal to Defendants, such as a cable television hook-up.

From April through July 10, 1986, Defendants lived in the residence pursuant to a lease but paid rent for only a few days. During that time, Defendants were notified that their mortgage commitment would be revoked because the lender's inspectors believed that the siding was defective. Defendants then instituted a suit in equity against Debtor in the Allegheny County Court of Common Pleas seeking specific performance of the agreement of sale and demanding that Debtor escrow $13,000.00 to cover the estimated costs of replacing the siding. Defendants also requested costs, fees and special damages. Debtor contested the allegations of breach and filed a counterclaim.

Defendants' action was indexed in the Allegheny County records as a *lis pendens* against the real estate but, before trial and for the purpose of avoiding the effects of Debtor's contemplated bankruptcy filing,[4] Defendants' petition to receive payment and to cancel the *lis pendens* was granted by a consent order entered in Common Pleas Court dated February 26, 1987. The consent order conditioned the cancellation of the *lis pendens* on Debtor paying Defendants $15,500.00 of the proceeds of sale of 203 Springhouse Drive and effecting the return of Defendants' $3,000.00 earnest money. No additional work was done to the property after Defendants vacated the premises in July, 1986, and it was sold to Donald R. and Rita J. Huckles (hereinafter the Huckles) on February 26, 1987, for $205,000.00. The addendum to the settlement statement utilized at the closing shows payment to Defendants of $15,-500.00 from the sale proceeds.[5] The $3,000.00 earnest money also was returned to Defendants. At the hearing on September 30, 1988, the Trustee withdrew his claim for this amount on the ground that Defendants were entitled to it inasmuch as their mortgage commitment had been withdrawn and, therefore, they had not breached the agreement of sale. The question of whether the siding in fact was defective was never litigated, but, because of our disposition of this adversary, we need not resolve the issue.

On March 3, 1987, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code and, in September of 1987, the instant adversary proceeding alleging an avoidable preferential transfer under 11 U.S.C. § 547 was commenced by the Trustee.

## DISCUSSION

The portions of § 547 of the Bankruptcy Code pertinent to this litigation provide:

---

lay or defraud creditors. Because this adversary is decided on the basis of 11 U.S.C. § 547, the issue of intent is not reached; however, the Court notes that the Trustee did not raise the § 548(a)(1) issue in his Complaint nor was the issue litigated.

2. All pleadings refer to the property as 203 Springhouse Drive. The undated agreement of sale identifies the property as Lot 303 Springhouse Drive.

3. At the hearing on September 30, 1988, the parties stipulated to this amount.

4. Trustee Exhibit 6. Paragraph 4 of defendant's Petition to Cancel Lis Pendens states that "[Debtor] is contemplating bankruptcy and [Defendants] seek[] to mitigate those damages by cancelling the said Lis Pendens and receiving said monies at this time."

5. It is noted that the Court of Common Pleas docket entry states the amount to be $15,000.00. Inasmuch as the parties agree that Defendants received $15,500.00 from the sale proceeds, the greater figure is used throughout this opinion.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition ...; (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—(1) to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange....

11 U.S.C.§ 547(b),(c).[6]

Defendants are creditors of the Debtor inasmuch as they have a claim against Debtor which arose pre-petition, notwithstanding the fact that Debtor disputed the claim. 11 U.S.C. § 101(9)(A). A debt is a liability on a claim. 11 U.S.C. § 101(11). The payment was made to Defendants on account of this debt within 90 days pre-petition. Defendants did not rebut the presumption that Debtor was insolvent at the time. 11 U.S.C. § 547(f), (g). Further-

more, it is almost certain that there will be no distribution to unsecured creditors and that Defendants have received more than they are entitled to under applicable Code provisions. The transfer is prima facie a preferential transfer avoidable by the Trustee. 11 U.S.C. § 547(b)(5)(C).[7]

■ Defendants contest the avoidability of the transfer on several grounds. First, Defendants argue that release of the *lis pendens* and payment to them by Debtor constituted a contemporaneous exchange for new value given to the Debtor and therefore is not avoidable by the Trustee. *See* 11 U.S.C. § 547(c)(1)(A). This contention is without merit. "New value" is defined as

... money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation....

11 U.S.C. § 547(a)(2).

By virtue of the consent order entered in the state action, Debtor's payment was substituted for the allegedly unfulfilled construction obligation. Such a substitution cannot constitute new value when it is made in settlement of a disputed unsecured claim.

Defendants do not expressly so state, but it necessarily is implied that they view the indexing of the *lis pendens*, rather than the payment, as the transfer. De-

---

**6.** Defendants' pre-trial statement raises the defense that payment to them was in the ordinary course of Debtor's business and, under § 547(c)(2), was not avoidable. This point was not pursued at trial; however, the Court fails to see how payment of a disputed claim is in the "ordinary course" of the business of building houses.

**7.** Debtor's schedules show liabilities exceeding assets by $149,343.84. All but $39,365.00 worth of Debtor's assets are subject to first mortgages. Undisputed, unsecured claims in the amount of $186,708.84 and priority wages in the amount of $2,000.00 will compete for this amount excluding Defendants' claim, claims of certain other creditors disputed by Debtor, and administrative expenses. In his post-trial brief, the Trustee

states that the Debtor's estate consists of $5,665.46 in a bank account, plus a residence with a stated market value of $173,000.00 which, on the date of filing of the petition, was subject to a mortgage balance of $161,000.00. Under either set of figures it is clear that there will be little if anything left for unsecured creditors. The court notes that Schedule A–2 appended to Debtor's bankruptcy petition lists a second piece of real estate valued at $192,000.00 subject to claims of $167,000.00. Both properties were under agreements of sale on the date of filing of the bankruptcy petition but all dollar amounts of record have been considered herein and do not change the conclusion that unsecured creditors will receive little.

fendants also contend that indexing the *lis pendens* created a lien and that because the *lis pendens* was indexed more than ninety days pre-petition, the "lien" is unavoidable. This argument also is without merit.

Under Pennsylvania law the indexing of a *lis pendens* is not a transfer of rights or liabilities nor does it create a lien. It merely serves as notice to third parties that certain real property is involved in litigation and that any interest in that property which a third party might acquire would be subject to the results of the underlying litigation. *Dice v. Bender,* 383 Pa. 94, 117 A.2d 725 (1955). *See also U.S. National Bank v. Johnson,* 506 Pa. 622, 487 A.2d 809, 812 (1985); *Houston–Starr Co. v. Virginia Mansions Apartments,* 295 Pa.Super. 480, 441 A.2d 1334, 1335 n. 1 (1982); *Blumenfeld v. R.M. Shoemaker Co.,* 286 Pa.Super. 540, 429 A.2d 654, 657–58 and n. 8 (1981); *McCahill v. Roberts,* 421 Pa. 233, 219 A.2d 306, 308 (1966).[8] Furthermore, removal of a *lis pendens* does not terminate the underlying litigation nor does it fix or determine the parties' rights or obligations. *U.S. National Bank v. Johnson, supra,* 487 A.2d at 812.

■ In the alternative Defendants assert that whether or not they have a lien on property by virtue of the *lis pendens,* they have a lien which is equitable in nature.

The claim of an equitable lien is based on two theories. The first is that the \$22,-600.00 worth of permanent improvements to the house, which they paid for, is in the nature of a mechanics lien which, if properly perfected, is not avoidable by the Trustee. *See* 11 U.S.C. §§ 101(47), 545, 546(b); 49 P.S. § 1101 *et. seq.* Defendants are in error. Under Pennsylvania law, mechanics liens are statutory while equitable liens are creations of equity at common law which do not arise by operation of statute and, until judgment, are unperfected and avoidable by the Trustee. *See* 11 U.S.C. § 544. *See also In re Allegheny International, Inc. et al.,* 93 B.R. 907 (W.D.Pa.1988). Even if Defendants' claim is in the nature of a mechanics lien, it is unperfected and, therefore, avoidable. *See Associated Lumber & Mfg. Co. v. Mastroianni,* 173 Pa.Super. 310, 98 A.2d 52 (1953) (lien is lost if statutory procedures are not complied with). *See also Joseph M. Eaton Builders, Inc. by Trustee v. Custom Heating 'Co.,* 84 B.R. 56, 58 (Bankr.W.D.Pa.1988), and cases cited therein.

■ Defendants next argue that they have an equitable lien because Debtor was unjustly enriched by the increased price paid at the time of the second sale.[9] The

---

**8.** The history and purpose of *lis pendens* were set forth in footnote 8 in *Blumenfeld,* 429 A.2d at 657–58, as follows:

"In *McCahill v. Roberts,* 421 Pa. 233, 219 A.2d 306 (1966) our Supreme Court discussed the nature and effect of a lis pendens:

'Lis pendens literally means a pending suit

. . . . .

'Lis pendens is construed to be "... 'the jurisdiction, power or control which courts acquire over property involved in a suit, pending the continuance of the action, and until its final judgment therein'": *Bungar v. St. Michael's Greek Catholic Ch.,* 272 Pa. 402, 404, 116 A. 389 (1922). The initial basis of the application of the doctrine was one of constructive notice to all the world of the pending litigation: *Diamond v. Lawrence County,* 37 Pa. 353 (1861). In later years, the courts determined that the doctrine was one of policy only, i.e., it would be unfair and an insult to the courts to permit the severance of rights in a property which they were then in the process of deciding: *Dovey's Appeal,* 97 Pa.

153 (1881). Having determined that the doctrine was founded on a policy, rather than conceptual basis, the next logical step was to decree the use of equitable principles in the application of the rule. This point was reached in *Dice v. Bender,* 383 Pa. 94, 117 A.2d 725 (1955), wherein we held that the doctrine does not establish an actual lien on the affected property, but rather merely gives notice to third parties that any interest that may be acquired in the property pending the litigation will be subject to the result of the action. *Id.* [421 Pa.] at 237–38, 219 A.2d at 308 (footnote omitted).

**9.** Defendants assert that this equitable lien transforms their claim from an unsecured claim to a secured one, and, therefore, the transfer at issue is unavoidable by the Trustee. The court reiterates the tenet that until judgment is entered, a claim to an equitable lien is an unsecured claim. Defendants cite *Gladowski v. Felczak,* 346 Pa. 660, 31 A.2d 718 (1943), which involved a lender who, in good faith, lent the

parties stipulated that the additional $22,-600.00 paid by the Huckles was the direct result of improvements paid for by Defendants.[10] Defendants contend that this constitutes unjust enrichment of Debtor. Defendants did not raise this contention until the hearing on September 30, 1988; however, the court notes that the mere fact that the property sold in 1987 for an amount in excess of the original sales price established in 1985 does not prove that Debtor was unjustly enriched. Debtor was in a position to seek another purchaser for the property only because the Defendants did not obtain a mortgage commitment. That Defendants' expenditure is the subject of an unsecured claim is the result of the combination of the facts and law applicable to this case and, while unfortunate for Defendants, is unchangeable by the Court and does not constitute unjust enrichment to Debtor.

The fact that the property was sold for $22,600.00 more than Defendants' contract price indicates that the alleged defect in the siding, if it existed at all, was not so significant that another lending company would not grant a mortgage or that another buyer would be unwilling to purchase the property absent substantial alteration. Under the circumstances any enrichment of Debtor was not unjust. Too, Defendants could have elected to continue the action for specific performance in the Court of Common Pleas of Allegheny County. They did not so choose. Instead, they abandoned their claim for specific performance and accepted a settlement payment on a disputed claim. In so doing, Defendants admitted a classic breach of contract scenario which can give rise to only an unsecured claim.

*In re Pribonic*, 70 B.R. 596 (Bankr.,W.D. Pa.1987), addresses the question of whether an agreement of sale constituted an executory contract which could be rejected by the Trustee. The court determined that, absent a decree for specific performance, rejection of the sales agreement left the buyer with only a claim for damages for breach of contract. *Id.* at 604. Where a right to an equitable remedy such as specific performance can be converted to a right to payment, there exists a claim cognizable under the Bankruptcy Code. *Id.* at 604–05. *See*, 11 U.S.C. § 101(4). Absent perfection, the claim is unsecured. *See Allegheny International, Inc., supra*, at 909–10.

Based on the foregoing, the Court finds that the Trustee is entitled to recover the preferential payment made to the Defendants in the amount of $15,500.00, which sum excludes hand money paid by Defendants. The Court notes that the merits of the underlying contractual dispute are not before the Court and nothing in this Opinion is to be construed to be a determination of same; rather, this Opinion is limited to finding that the payments made to effect the removal of the *lis pendens* were preferential and that Defendants failed to establish that they are entitled to an equitable lien, that an equitable lien exists, or that any equitable lien which may exist is not avoidable under 11 U.S.C. § 544. The Trustee, therefore, has the right to that portion of the proceeds of sale now in Defendants' possession.

An appropriate Order will be issued.

---

grantee of a third entity an amount sufficient to pay off the grantor's judgment lien and restore premises which had been demolished. The lender took back a mortgage and the grantee rehabilitated the property. Subsequently the grantee's title was found to be illegal and void and the lender requested that its mortgage be declared a lien on the property against the third party grantor. *Gladowski* is distinguishable from the instant case in that the lender held an unavoidable security interest, as that term is defined in the Bankruptcy Code, in the form of a mortgage. *See* 11 U.S.C. § 101(45).

**10.** Although the parties stipulated that the increased price was due to improvements paid for by Defendants, the Court is not entirely convinced that the passage of time and changes in market conditions were not factors. However, we need not resolve this point.